UNITED STATES of America,
Plaintiff/Appellee,

v.

Dennis Allen HENDRICKS,
Defendant/Appellant.

No. 83–1308.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 10, 1984.

Decided Sept. 21, 1984.

Nancy Fiora, Asst. U.S. Atty., Tucson, Ariz., for plaintiff/appellee.

Robert J. Hirsh, Hirsh & Fines, Tucson, Ariz., for defendant-appellant.

Before FLETCHER, REINHARDT and BEEZER, Circuit Judges.

FLETCHER, Circuit Judge:

Hendricks appeals the district court's denial of his motion to suppress evidence seized in a search of his residence pursuant to a warrant. We affirm.

## FACTS

On May 10, 1983 a customs officer at Los Angeles inspected a cardboard box arriving from Brazil addressed to Dennis Hendricks, 2835 North Sidney, Tucson, Arizona. The address on the box was Hendricks's home address, but was there for identification only because the box was shipped in such a manner that Hendricks was required to pick it up personally. Inside the box was a suitcase in which the inspector found hidden 5–7 pounds of cocaine. The customs agent sent the box on to Tucson, where it was turned over to Drug Enforcement Administration (DEA) officials.

While the DEA agents were holding the box, they gathered the following additional information, which was contained in the affidavit for the search warrant:

1. Dennis Hendricks and Gigi Ghazarosian lived at 2835 N. Sidney.

2. Ghazarosian used to live at 3344 N. Kelvin.

3. 3344 N. Kelvin is the location of a business named "Brazilian Imports"

4. Dennis Hendricks is the operator of Brazilian Imports.

5. On March 31, 1983 a greeting card containing 10.4 grams of cocaine arrived at Los Angeles Airport addressed to Brazilian Imports, 3344 N. Kelvin.

6. Ghazarosian's car is registered to 3344 N. Kelvin and is in the long-term parking section of the Tucson Airport.

Upon this evidence, and knowing that the box was at the airport in the possession of DEA agents, the magistrate issued a warrant for a search of Hendricks's residence at N. Sidney. Although the warrant states that "on the premises known as 2835 N. Sidney ... *there is now being concealed ... a ... cardboard box* [containing cocaine]," (emphasis added) it further states "this search warrant is to be executed only upon the condition that the above described box *is brought to* the aforesaid premises" (emphasis added).

Hendricks made a motion to suppress, which was denied by the district court. Hendricks then entered a conditional guilty plea under Fed.R.Crim.P. 11(a)(2) and was sentenced to 3 years imprisonment and 5 years probation on one count of transportation of cocaine in violation of 21 U.S.C. § 952(a) (1982). Hendricks appeals only the denial of the suppression motion.

## DISCUSSION

We must inquire first whether probable cause existed for issuance of the warrant. If so, our inquiry is at an end. If not, we look to whether the searching officers nonetheless acted reasonably and in good faith. *United States v. Leon,* —— U.S. ——, 104 S.Ct. 3405, 3422–23, 82 L.Ed.2d 677 (1984).

### I

*The Search Warrant Was Issued Without Probable Cause.*

■ In making the determination as to probable cause, our role is limited to "ensuring that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed." *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983) (quoting *Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)). The Supreme Court has stressed that "courts must continue to conscientiously review the sufficiency of affidavits in which warrants are issued," *Gates,* 103 S.Ct. at 2332, *see Leon,* 104 S.Ct. 3422–23. The condition inserted into the warrant by the magistrate, that the warrant was not to be executed until the suitcase arrived at the house, is the principal source of our concern in this case.

If the suitcase had been in the house, or if probable cause existed to believe it was there, issuance of the warrant would have been proper. However, at the time the warrant was issued, the magistrate *knew* the suitcase was in the possession of the agents, not at the house. The agents, by calling Hendricks to come for the suitcase tried to ensure that the condition subsequent inserted into the warrant would happen.[1] However, at the time the warrant issued and, in fact, until the suitcase was actually brought to the house, there was no certainty that it would ever be brought there.

In *Durham v. United States,* 403 F.2d 190 (9th Cir.1968), we said, "The facts ... must be sufficient to justify a conclusion ... that the property which is the object of the search is probably on the person or premises to be searched at the time the warrant is issued." 403 F.2d at 193. In *Durham,* the court found that the fact that property was on the premises in the past would not justify a present invasion of privacy. 403 F.2d at 194–95. In this case, the business premises were the only place that was linked to past illegal activity, the residence not at all.

The Government cites *United States v. Goff,* 681 F.2d 1238 (9th Cir.1982), to support the proposition that the warrant can be prospective. In *Goff* a warrant was issued to search a person who was on a non-stop airplane to the district where the warrant was to be executed. Although we rejected the argument that the evidence must be physically present in the district at time of issuance, we were concerned that "probable cause exist at the time of the

---

1. The fact that the agents created the probable cause (if any) to search the house is analogous to a situation where police create exigent circumstances and then use the existence of those cumstances to escape the existence of those exigencies to justify a search. *See United States v. Allard,* 634 F.2d 1182, 1187 (9th Cir.1980), and cases cited therein. Appellant does not rely on this argument to escape *Leon,* however.

search." 681 F.2d at 1240. The warrant was proper only because probable cause existed "to believe that the person searched would arrive within the district in a reasonable time." 681 F.2d at 1240. By contrast, in this case, the agents had no information giving rise to a belief that the package would ever go to Hendricks's home. *See United States v. Foster,* 711 F.2d 871, 878 (9th Cir.1983), *cert. denied,* — U.S. ——, 104 S.Ct. 1602, 80 L.Ed.2d 132 (1984) (to justify the search of a residence, the facts supporting the warrant must show probable cause to believe that the evidence sought is *currently* in the place to be searched, (citing *United States v. Valenzuela,* 596 F.2d 824, 828 (9th Cir. 1979), *cert. denied,* 441 U.S. 965, 99 S.Ct. 2415, 60 L.Ed.2d 1071 (1979) (emphasis added)).

Defendant accurately perceives the vice of the prospective search warrant: By issuing such a warrant, the magistrate abdicates to the DEA agents an important judicial function—the determination that probable cause exists to believe that the objects are currently in the place to be searched. The cases cited by the Government, *e.g., United States v. Lowe,* 575 F.2d 1193 (6th Cir.), *cert. denied,* 439 U.S. 869, 99 S.Ct. 198, 58 L.Ed.2d 180 (1978); *United States ex rel. Beal v. Skaff,* 418 F.2d 430 (7th Cir.1969), are, as defendant notes, controlled delivery cases. As in *Goff,* if the government knows that the person or object will be at a particular place at a certain time, probable cause exists to issue a warrant for a search at that time. Here, unless the suitcase were on a sure course to the house, for example, in the mail addressed to the home address, *see Skaff; Lowe,* no probable cause would exist to believe it would arrive there. Hendricks had not even picked up the box at the time the warrant was issued; there was no assurance he would pick up the box or that he would take it to the house. Facts did not exist at the time the magistrate issued the warrant from which the magistrate could make the necessary judicial determination that probable cause existed.[2]

Several cases in this circuit have considered the propriety of issuing search warrants for a suspect's residence based only upon probable cause that the suspect was guilty of the underlying crime. In *United States v. Lucarz,* 430 F.2d 1051, 1055 (9th Cir.1970), we observed that

> [I]t cannot follow in all cases, simply from the existence of probable cause to believe a suspect guilty, that there is also probable cause to search his residence. If that were so, there would be no reason to distinguish search warrants from arrest warrants, and cases like *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), would make little sense.

*Accord United States v. Freeman,* 685 F.2d 942, 949 (5th Cir.1982). To establish the nexus between the place and the objects sought, the court may look to "the type of crime, the nature of the missing items, the extent of the suspect's opportunity for concealment, and normal inferences as to where a criminal would be likely to hide stolen property." *Lucarz,* 430 F.2d at 1055. *See also United States v. Spearman,* 532 F.2d 132, 133 (9th Cir.1976). For example, in *Lucarz,* the defendant was a mail clerk at a post office accused of stealing money from a mail pouch. We observed that the defendant had ample opportunity to make a trip home to hide the stolen envelopes and that he had left the post office for 35 minutes, which was enough time to go home, but not to seek a more unusual hiding place.

In contrast to *Lucarz,* here there is not sufficient nexus between the box and the residence. *See United States v. Lockett,* 674 F.2d 843, 846 (11th Cir.1982) (Lockett had purchased a case of dynamite, had a grudge against the telephone company, a bomb had been found at a telephone com-

---

**2.** A preferred substitute to the procedure utilized in this case is the use of a telephonic warrant. If the agents became aware of information that led them to believe that the suitcase was in the house, they could have so informed the magistrate so that the magistrate and not the agent could make the determination of probable cause.

pany facility but the court observed, "Missing is a critical link in the chain of facts and circumstances which would lead to a reasonable belief that dynamite was improperly stored at [the residence]"). *United States v. Flanagan*, 423 F.2d 745, 747 (5th Cir.1970) (affidavit revealed no factual observations that the stolen goods were at Flanagan's residence). We conclude the warrant was invalid for lack of probable cause for its issuance.

## II

### *Application of The Exclusionary Rule Is Unwarranted In This Case.*

Although the search warrant was invalid, *Leon*, 104 S.Ct. at 3422, counsels that the evidence should not be suppressed if the officers' reliance on the warrant was reasonable. The standard to be employed is an objective one and the prosecution bears the burden of proof. *Id.* Although the lower court did not have occasion to determine whether the officers acted in good faith, if the record is adequate we can reach that issue for the first time on appeal since the district court's determination of good faith would be subject to *de novo* review as a mixed question of fact and law under *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.1983) (en banc).

At oral argument before our court, appellant urged that we exclude the evidence because the magistrate "wholly abandoned his judicial role ...." *Leon*, 104 S.Ct. 3422.[3] We disagree. Although the magistrate impermissibly delegated an element of probable cause determination to the DEA agents, *i.e.*, whether the suitcase was at the house, it appears from the record that he did so in an effort to *limit* official conduct, not expand it. The magistrate did not abandon his judicial role to the officers, and the officers' reliance on the warrant was not unreasonable.

AFFIRMED.

**3.** The parties did not argue that the other two exceptions to *Leon* applied.