[No. A058119. First Dist., Div. Three. Aug. 31, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL ALAN SOUSA, Defendant and Appellant.

## COUNSEL

Mark P. Harris and Timothy Lee Haxton, under appointments by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Stan M. Helfman and Tyler R. Meade, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**CHIN, J.**—Michael Alan Sousa appeals from a judgment entered upon his plea of no contest to a charge of cultivation of marijuana (Health & Saf. Code, § 11358). He contends that the warrant issued for search of his residence was illegal because it was not based on an affidavit setting forth probable cause, and that the trial court therefore erred in denying his motion to suppress pursuant to Penal Code section 1538.5. We disagree and affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

On October 10, 1990, Edward James Pecis, a special agent of the California Department of Justice, Bureau of Narcotic Enforcement (BNE), applied to a Del Norte County Superior Court judge for a warrant to search appellant's residence at 118 Redmond Road, Eureka, in Humboldt County. The affidavit of probable cause attached to the warrant application stated that on October 4, 1990, Sergeant Brian Tilley of the Del Norte County Sheriff's office contacted Pecis to ask for assistance in arranging a "reverse sting" or controlled sale of 10 pounds of marijuana to appellant.[1] That same day, Special Agent Ronald Prose of the BNE field office in Redding told Pecis that he had known appellant to use marijuana in the past.[2] Pecis could not find any other criminal information on appellant.

On October 5, 1990, Pecis asked Agent Mike Mori of the Humboldt County Narcotic Task Force to confirm that 118 Redmond Road, Eureka,

---

[1] At that time, Sergeant Tilley was head of the Del Norte County Marijuana Suppression Program. This program was also sometimes referred to as the Marijuana Suppression Team or the Marijuana Eradication Team (MET). For convenience, we will refer to the program as MET. MET should not be confused with the Del Norte County Interagency Narcotic Task Force, also called the Del Norte County Interagency Drug Task Force (hereafter Drug Task Force), which Tilley previously headed, and which also participated in this investigation.

[2] Although the affidavit of probable cause in support of the search warrant does not so state, the record indicates that Prose's information was approximately five years old, dating from his employment in Humboldt County.

was appellant's residence. Mori did so by checking Pacific Gas and Electric Company records and by visually inspecting the premises, where he saw a mailbox with "118 Sousa" on it. Pecis found a record of a 1988 contact between appellant and the Eureka Police Department, at which time appellant stated his home address as 118 Redmond Road, Eureka.

On October 9, 1990, Pecis spoke by telephone with Agent Ernest Stewart of MET and a confidential informant. Although not named in the search warrant affidavit, this confidential informant was later identified as Terry Nightingale. Nightingale told Pecis that he had known appellant for at least 10 years, during which time he had seen appellant sell and use marijuana. According to Nightingale, appellant had recently bragged of selling 60 pounds of marijuana for $4,000 per pound, boasted that he could sell 10 pounds of marijuana every 3 days, and stated that he needed an additional supplier because he could not grow marijuana fast enough to satisfy demand.

Nightingale told appellant that he knew a grower (Pecis) who could supply appellant's needs. Appellant asked to meet with the supplier in order to purchase 10 pounds of marijuana. At Pecis's direction, Nightingale arranged for appellant and Pecis to meet in Crescent City during the week of October 8 to 12, 1990, at which time appellant would purchase 10 pounds of marijuana for between $25,000 and $30,000.

Nightingale described appellant's premises in Eureka as having two residences, a greenhouse, and outbuildings. According to Nightingale, appellant and his wife lived in one residence, and a woman appellant called "mother" lived in the other. Nightingale stated that appellant was growing marijuana in the greenhouse as recently as October 2, 1990, and that appellant's wife, Maria Sousa, and his mother assisted him in cultivating the marijuana.

The affidavit stated that Pecis "expects to meet" with appellant on October 11, 1990, sell appellant a quantity of marijuana consistent with an amount intended for resale, and immediately arrest appellant on that basis. Pecis requested issuance of a warrant to search appellant's Eureka property "[c]ontingent upon the sale of marijuana and arrest of [appellant] within Del Norte County . . . ."

Pecis stated that he had conducted a records check on Nightingale through the Department of Justice, which revealed that Nightingale had a "manual rap sheet." The rap sheet, however, had been removed from the department's files in Sacramento and mailed to the Del Norte County Sheriff's office. Finally, Pecis stated that Nightingale's identity should remain confidential

because he was currently assisting law enforcement officers in other narcotics cases.[3]

The search warrant was issued on October 11, 1990, and the reverse sting took place the same day. Pecis, posing as a marijuana supplier, met appellant in a parking lot on Highway 101 in the Crescent City area. Appellant offered to purchase 12 pounds of marijuana from Pecis for $35,000. Pecis agreed to sell twelve pounds in two installments of six pounds each. Pecis gave appellant six pounds of marijuana, and appellant in turn gave Pecis $35,000 in cash. When Pecis went to his car, purportedly to get the other six pounds of marijuana, appellant and two codefendants were taken into custody. Following appellant's arrest, police officers served the search warrant on appellant's residence in Eureka, where they seized 337 growing marijuana plants, approximately 30 pounds of dried marijuana, a 12-gauge shotgun, a triple beam scale, packaging materials, and other evidence.

Appellant was charged by information with cultivation of marijuana (Health & Saf. Code, § 11358) and possession of marijuana for sale (Health & Saf. Code, § 11359). He filed a motion to suppress evidence pursuant to Penal Code section 1538.5.

At the hearing on appellant's motion to suppress, testimony of various law enforcement officials involved in the investigation and sting revealed information about Nightingale that the search warrant affidavit did not include. In August or September 1990, California Highway Patrol Officer David Nelson, who was also a member of the Drug Task Force, spoke with Birgetta Beth Walker, who had recently been convicted of possession of marijuana for sale. Walker stated that Nightingale was the supplier of the marijuana she was selling, and that he was dealing in pounds of the drug. Walker's husband, Gale, corroborated this information. Officer Nelson unsuccessfully attempted to arrange a controlled buy between Birgetta Beth Walker and Nightingale. After she was sentenced, however, Nightingale would have nothing to do with her.

On October 4, 1990, Nightingale first approached Del Norte County Assistant Sheriff Steven E. Villian, whom he knew personally, with information about appellant's involvement in the cultivation and sale of marijuana. Nightingale wanted to know if Villian could initiate an investigation of appellant. During their discussion, Nightingale expressed interest in receiving up to $10,000 for his participation in such an investigation. Villian told Nightingale that he might be able to apply for as much as 25 percent of

---

[3]Nightingale's identity was subsequently revealed at the preliminary hearing on the charges pending against appellant in Del Norte County.

seized assets under federal forfeiture procedures, which could be a substantial amount if real estate was involved.[4] Villian then referred Nightingale to Sergeant Tilley, the MET supervisor. Tilley in turn contacted Pecis and helped him arrange the reverse sting with Nightingale's assistance.

In the meantime, Officer Nelson reported the Walkers' allegations about Nightingale's drug dealings to Sergeant Steve Morris, the head of the Drug Task Force. After learning that MET intended to use Nightingale as part of a reverse sting, Sergeant Morris informed Sergeant Tilley and Assistant Sheriff Villian of Nightingale's alleged involvement in drug distribution. Morris assumed that either Villian or Tilley would convey this information to Pecis. However, Tilley testified that neither Nelson nor Morris told him that Nightingale might be smuggling marijuana until more than one week after completion of the reverse sting and appellant's arrest.

Pecis testified that after hearing Nightingale's information about appellant and arranging for Nightingale's participation in the reverse sting, he concluded that Nightingale was also involved in drug trafficking, because of his knowledge about marijuana and what would be found on appellant's premises. Prior to preparing his affidavit for the search warrant, Pecis investigated Nightingale by contacting several agencies, including the Drug Enforcement Administration, the United States Customs Service, the San Francisco office of the BNE, the Humboldt County Sheriff's Department, the Eureka Police Department, the Arcata Police Department, and the Western States Information Network. Aside from the information he received from Agent Prose, Pecis discovered only one previous contact by the Eureka Police Department on "a non-drug matter." However, it is not clear from Pecis's testimony whether this contact was with appellant or with Nightingale.

Pecis also asked Sergeant Tilley to investigate appellant's background and to determine whether Nightingale was involved in drugs, had ever been arrested, or had served as an informant before. Tilley and his assistant, Deputy Ernest Stewart of the Del Norte County Sheriff's Department, contacted the Department of Motor Vehicles, the National Crime Information Center, the Western States Information Network, the Del Norte County Sheriff's Department, and the Humboldt County Sheriff's Department. According to Tilley, he instructed Stewart to contact the Crescent City Police Department and the Drug Task Force for information on Nightingale, and Stewart reported back that they had no information. Stewart, however, did not recall either request, and testified that he did not check with either entity

---

[4]Ultimately, Nightingale received $500 from the Del Norte County Sheriff's Department and $500 from the BNE.

because "[i]t's not a standard practice of ours." Subsequently, Tilley told Pecis that he had no information on either appellant or Nightingale. This was after the point at which, according to Nelson and Morris, Tilley had already been informed that Nightingale was allegedly involved in large scale distributions of marijuana.

Sergeant Morris testified that he had long known of Nightingale from the latter's numerous purchases of firearms, as well as unconfirmed anonymous information that Nightingale was involved in marijuana trafficking. Morris knew and was concerned about the fact that Nightingale had purchased "a lot more guns than he could possibly keep in his house." Assistant Sheriff Villian also testified that there had been a previous investigation in connection with Nightingale's purchases of firearms. There had once been a police file on Nightingale, but when Sergeant Morris looked for it just before Pecis applied for a search warrant, it could no longer be found. Sharon Roberts, the secretary for the Drug Task Force, testified that there had been an informal intelligence file on Nightingale since November 1988, but that it had been discovered missing when Officer Nelson tried to locate it in August 1990. Prior to that, she had last seen the file in Sergeant Tilley's desk.

Pecis further testified that he had made his request to search appellant's residence contingent on the sale of marijuana to appellant during the reverse sting operation planned for the following day because he did not want to rest his reputation in making the warrant application on an untested confidential informant with very little verified information. Pecis wanted to have the warrant in hand at the time of the reverse sting so that the search could proceed before appellant could alert anyone at his home.

The trial court denied appellant's motion to suppress. Appellant thereafter withdrew his not guilty plea and entered a plea of no contest to the charge of cultivation of marijuana. On the motion of the district attorney pursuant to a plea agreement, the trial court dismissed the possession of marijuana for sale count. The trial court sentenced appellant to the upper term of three years in state prison, but stayed execution of the sentence and granted appellant five years of formal probation, with an order to perform five hundred hours of community service and a stayed fine of $1,500. This appeal followed.

## DISCUSSION

Appellant contends that the trial court erred in denying his motion to suppress evidence on the following grounds: (1) the search warrant was an illegal anticipatory warrant; (2) the affidavit in support of the warrant relied on uncorroborated information from an untested "non-citizen" informant; (3)

the search warrant affidavit intentionally omitted material information about the informant's credibility that would have vitiated a finding of probable cause; and (4) no good faith exception applies to support the warrant's issuance because Pecis intentionally omitted material information from the affidavit and lacked a reasonable belief that probable cause supported the warrant.

### Anticipatory or Contingent Warrant

An anticipatory or contingent search warrant is one based on an adequate showing "that all the requisites for a valid search will ripen at a specified future time or upon the occurrence of a specified event . . . ." (*Alvidres* v. *Superior Court* (1970) 12 Cal.App.3d 575, 577 [90 Cal.Rptr. 682]; see also *People* v. *Shapiro* (1974) 37 Cal.App.3d 1038, 1042 [113 Cal.Rptr. 54] [warrant "not invalid because it was based upon an affidavit which established a future, rather than a present, probable cause to search"].) Execution of an anticipatory warrant therefore depends upon the occurrence of some future event; it may not be served until satisfaction of a condition precedent. (2 LaFave, Search and Seizure (2d ed. 1987) § 3.7(c), pp. 94-100.)

In this case, because Pecis believed that the information from Nightingale in the warrant affidavit was "very slim," he sought to bolster the affidavit by stating that he expected to meet appellant in Del Norte County on October 11, 1990, sell him marijuana, and then immediately arrest him for possession of marijuana for sale. The affidavit specifically requested permission to search appellant's residence "[c]ontingent upon the sale of marijuana and arrest of [appellant] within Del Norte County . . . ." Appellant now asserts that the warrant was invalid because it depended upon the police's performance of future discretionary acts, and improperly delegated to the police the determination of whether probable cause existed. We disagree.

Federal and state courts have repeatedly upheld anticipatory warrants based on the expected delivery of contraband to the place to be searched. (See *U.S.* v. *Garcia* (2d Cir. 1989) 882 F.2d 699, 702; *U.S.* v. *Goodwin* (4th Cir. 1988) 854 F.2d 33, 36 [citing cases]; *Alvidres* v. *Superior Court, supra,* 12 Cal.App.3d at pp. 581-582.) Such warrants recognize that the police often must act quickly, "especially when dealing with the furtive and transitory activities of persons who traffic in narcotics . . . ." (*Alvidres, supra,* at p. 581.) Because anticipatory warrants enable the police to reduce "the time that is consumed in obtaining search warrants . . . ," their availability encourages police officers "to obtain a warrant in advance" rather than "forcing them to go to the scene without a warrant and there make a decision

at the risk of [later] being second-guessed by the judiciary . . . ." (*Ibid.*) Thus, "achievement of the goals which our high court had in mind in adopting the exclusionary evidence rule is best attained *by permitting officers to seek warrants in advance when they can clearly demonstrate that their right to search will exist within a reasonable time in the future.*" (*Ibid.*, italics added.)

Appellant contends that anticipatory warrants have only been upheld where government agents seek to search a location immediately after delivery of a package of contraband to that specific location. Otherwise, appellant argues, neither California nor federal law supports the issuance of a search warrant in which probable cause is contingent upon a future sale of contraband to a defendant.

It is true that most anticipatory warrant cases involve controlled deliveries of packages containing contraband. None of them, however, holds that anticipatory warrants are improper in other contexts. Instead, they establish that a warrant may issue on a clear showing that the police's right to search at a certain location for particular evidence of a crime will exist within a reasonable time in the future. (*People v. Shapiro, supra,* 37 Cal.App.3d at p. 1042; *People v. Sloss* (1973) 34 Cal.App.3d 74, 82 [109 Cal.Rptr. 583]; *People v. Superior Court (Marcil)* (1972) 27 Cal.App.3d 404, 410-411 [103 Cal.Rptr. 874]; *Alvidres v. Superior Court, supra,* 12 Cal.App.3d at pp. 580-581.)

In challenging the anticipatory warrant issued in this case, appellant relies on *United States v. Hendricks* (9th Cir. 1984) 743 F.2d 653, which held that there was no probable cause to support issuance of a conditional search warrant. In *Hendricks,* contraband was sent for defendant to pick up at the airport. Police obtained a warrant to search defendant's residence contingent upon the package being claimed and brought there. The court found that the warrant was invalid because, at the time it was issued, there was no basis for believing that the package would be claimed, picked up, and taken to the place to be searched. (*Id.,* at p. 655.)

Contrary to appellant's position, *Hendricks* does not require invalidation of the warrant in this case. *Hendricks* is factually distinguishable. There, the warrant was predicated *exclusively* on the anticipated delivery of the contraband to the defendant's house. Unlike in this case, the police in *Hendricks* had no information linking the house to defendant's suspected illegal activities, and, hence, no reason to believe the contraband would in fact be brought there. (*United States v. Hendricks, supra,* 743 F.2d at pp. 653-655.) Here, probable cause to issue the search warrant was predicated on *both* the anticipated success of the reverse sting operation, *and* on

Nightingale's detailed description of appellant's cultivation, harvesting, and selling of marijuana at his residence, the place to be searched. The purpose of the condition precedent was to corroborate the untested informant's information, not to serve as the sole basis for issuance of the warrant, as in *Hendricks*.

 *Hendricks* thus *supports* the principle that an anticipatory warrant may issue upon a clear showing that evidence of a crime will be at a particular location at a specified time in the future. Once the police present evidence meeting this requirement, a magistrate may issue an anticipatory warrant contingent on the occurrence of an event in the future. (2 LaFave, Search and Seizure, *op. cit. supra*, § 3.7(c), at pp. 94-100.) The warrant issued in *Hendricks* was premature because it was based on mere speculation that evidence of a crime might be found at a given location at some future time. There was no present assurance that the box would be claimed, picked up, or taken to the defendant's house. (*United States* v. *Hendricks, supra*, 743 F.2d at pp. 654-656.) Thus, at the time the warrant was issued, no crime had been committed, and it was a matter of sheer speculation whether evidence of a crime might be found at a given location in the future. (See *State* v. *Vitale* (1975) 23 Ariz.App. 37 [530 P.2d 394, 397-399].)

A case that illustrates the principle we have stated and is factually closer to this one is *State* v. *Gutman* (Alaska Ct. App. 1983) 670 P.2d 1166, in which an anticipatory warrant was issued based on an expected purchase of controlled drugs and information obtained from a confidential informant. The search warrant of the suspected drug dealer's residence was to be executed only if the drug transaction took place as planned. (*Id.*, at p. 1169.) The Alaska court found that under the circumstances presented, the anticipatory search warrant for the defendant's residence did not leave determination of probable cause in the hands of the police and was not premature, because *at the time of issuance of the search warrant*, the magistrate had probable cause to believe that the defendant would be involved in a drug sale, that his residence would be linked to the sale, and that the sale would occur in the immediate future. Because the likelihood of the criminal act (the anticipated sale) and the probable presence of contraband at the place to be searched were both established *prior* to issuance of the warrant, the warrant was not based on mere speculation as to the possible occurrence of criminal activity in the future. (*Id.*, at p. 1173; see also *U.S.* v. *Garcia, supra*, 882 F.2d at pp. 700-703.)

 In this case, as in *Gutman*, at the time the warrant was issued, there was a clear showing that appellant would be involved in an illegal drug

purchase, which would take place in the immediate future.[5] Moreover, with Nightingale's information, Pecis established a direct link between appellant's trafficking activities and his residence. The determination of probable cause was not left in the hands of the police, to be made at some point in the future; the magistrate had sufficient information to make that determination prior to issuing the warrant.

It is immaterial that the warrant was contingent upon the performance of discretionary acts by the police, i.e., the controlled sale. In the search warrant affidavit, Pecis swore that he expected to meet appellant and sell him marijuana on October 11, 1990, in Del Norte County. Although it was possible that the sale would not occur, nothing in the affidavit indicated that Pecis might decide, in his discretion, not to pursue the reverse sting. The same theoretical discretion exists in the context of controlled deliveries, where, as appellant concedes, anticipatory warrants have been repeatedly approved. (*U.S.* v. *Garcia, supra,* 882 F.2d at pp. 700-703 [there was no positive assurance contraband would arrive at location to be searched, and federal agents could have called off delivery]; *U.S.* v. *Goodwin, supra,* 854 F.2d at p. 36 [contraband was to be delivered through the mail, but had not yet been sent]; *People* v. *Superior Court (Marcil), supra,* 27 Cal.App.3d at pp. 408-411 [officers accompanying controlled delivery had theoretical discretion to stop the operation prior to delivery].)

Here, as in those cases, there was no reason to believe that the police would exercise their theoretical discretion to abort the sting. Pecis's affidavit established that, upon completion of the reverse sting, the police would have the right to search for contraband at appellant's residence. Implicit in both the controlled-delivery cases and the instant situation is the presumption that the police will not execute the search warrant until after they have confirmed that the anticipated event, whether delivery or prearranged sale of contraband, has actually taken place. "It is logical to assume . . . [officers] would not be disposed to undermine the success of their efforts by premature execution of the warrant." (*Alvidres* v. *Superior Court, supra,* 12 Cal.App.3d at p. 582.) ■ Where, as here, the affidavit sets out in detail the anticipated events upon which execution is contingent, and the magistrate determines that the right to search will exist upon the occurrence of these events, the determination of probable cause is not improperly delegated by leaving to the officers the future determination of whether those events have actually occurred.

---

[5]Pecis executed his affidavit on October 10, 1990. In the affidavit, Pecis stated that he anticipated completing the reverse sting the next day, October 11, 1990.

In this case, in the search warrant affidavit Pecis specifically stated that he was requesting permission to search appellant's premises "[c]ontingent upon the sale of marijuana and arrest of [appellant] within Del Norte County . . . ." However, the warrant did not expressly set out this condition of its execution, nor did it expressly incorporate Pecis's affidavit.[6] The court in *Alvidres* v. *Superior Court, supra*, 12 Cal.App.3d at page 582, was of the opinion that such specification was optional.[7] Other cases have stated that an anticipatory warrant should expressly set out or incorporate by reference the contingent events or other criteria upon which valid execution of the warrant is conditioned. (*U.S.* v. *Garcia, supra*, 882 F.2d at pp. 703-704; *State* v. *Gutman, supra*, 670 P.2d at p. 1173; *Johnson* v. *State* (Alaska 1980) 617 P.2d 1117, 1124, fn. 11.)

We conclude that to the extent the failure to state the contingency in the warrant is viewed as a defect, exclusion is not required in this case because the search was conducted in objectively reasonable good faith reliance upon the warrant.[8] (*Massachusetts* v. *Sheppard* (1984) 468 U.S. 981, 987-991 [82 L.Ed.2d 737, 742-945, 104 S.Ct. 3424]; see *People* v. *MacAvoy* (1984) 162 Cal.App.3d 746, 757-758, 763-765 [209 Cal.Rptr. 34].) Pecis, the affiant in the warrant affidavit, specifically stated the contingency in the affidavit and personally made the controlled sale that was the condition on execution of the search warrant. The officers did actually wait until the sale was successfully completed before executing the warrant. Despite the absence of an express restriction on the face of the warrant, the officers behaved *as if* the warrant was so restricted. Their belief that the search they actually conducted was validly authorized by the warrant was objectively reasonable. (Cf. *People* v. *Alvarez* (1989) 209 Cal.App.3d 660, 665-668 [257 Cal.Rptr. 445] [where warrant omitted description of items to be seized,

---

[6]Because the affidavit was neither incorporated by reference in the warrant nor, as far as the record shows, attached to it, Pecis's specification of the contingency in the affidavit does not cure any deficiency in the warrant itself.

[7]"[T]he magistrate, if he so desires, could insert in the warrant a direction that it be executed upon the occurrence of a given event or after the passage of a specified period of time." (*Alvidres* v. *Superior Court, supra*, 12 Cal.App.3d at p. 582.)

[8]Accordingly, we need not decide whether the warrant itself must set out the conditions of its execution. However, in our opinion, the inclusion of such an express statement of the necessary contingencies is definitely the preferred practice in issuance of an anticipatory warrant. This is particularly true where, as here, the affidavit shows the probable existence of some contraband at the place to be searched *before* the contingent event takes place. Where probable cause is based only on an expected delivery, as in *Alvidres* v. *Superior Court, supra*, 12 Cal.App.3d at pages 580-581, it can confidently be assumed the officers will not execute the warrant prematurely. But where probable cause is based in part on existing contraband and in part on an expected future delivery, sale, or purchase, it is possible an officer might decide to execute a warrant containing no facial restriction even if the anticipated event does not occur.

affiant officer acted in reasonable good faith in executing warrant and seizing only items described in his affidavit].)

■ Appellant also contends that the search warrant affidavit does not set forth probable cause because it contains only the uncorroborated information of an untested informant. The complete answer to this contention is that Nightingale's otherwise uncorroborated information was in fact corroborated by the occurrence of the anticipated contingency, i.e., the reverse sting. Pecis's aim in seeking an anticipatory warrant in this case was to bolster the probable cause evidence provided by Nightingale's information with the expectation that a controlled sale of marijuana to appellant would take place the next day. Nightingale's information, although concededly "slim," was not worthless. Through it, Pecis established a nexus between appellant's residence and his anticipated large-scale purchase of marijuana in Crescent City. That Nightingale was a suspicious individual did not invalidate his information; as Pecis correctly testified, most informants with information about drug trafficking are to some extent involved in it themselves. (See *People* v. *Kurland* (1980) 28 Cal.3d 376, 393-394 [168 Cal.Rptr. 667, 618 P.2d 213].)

### Omissions From Affidavit

■ Appellant also contends that the trial court should have found the warrant invalid because material facts about Nightingale's credibility were knowingly omitted from the affidavit. We disagree.

After the hearing and further briefing on appellant's motion to suppress, the trial court found that the affidavit had in fact omitted information about Del Norte County officers' suspicions regarding, and efforts to find evidence against, Nightingale; his stated desire for a large monetary reward; the missing police file on Nightingale; and Sergeant Tilley's representation to Pecis that he had no negative information on Nightingale despite the evidence that Tilley was familiar with Nightingale's suspicious background. The trial court found these omissions material and intentional on the part of Del Norte County law enforcement personnel, and characterized the affidavit as "an outstanding example of, at a minimum, a lack of candor," and "a splendid example of omission gained by utilizing an outside affiant."

When material information has been intentionally omitted from a warrant affidavit, the proper remedy is to restore the omitted information and reevaluate the affidavit for probable cause. (*Franks* v. *Delaware* (1978) 438

U.S. 154, 155-156 [57 L.Ed.2d 667, 672, 98 S.Ct. 2674]; *People* v. *Maestas* (1988) 204 Cal.App.3d 1208, 1216 [252 Cal.Rptr. 739].) Upon doing that in this case, the trial court found that the warrant was still supported by probable cause: "we still have an articulate recitation of Nightingale's knowledge of [appellant's] conduct, his sales activity and need for contraband, an accurate description of [appellant's] property, replete with greenhouses and growing marijuana as recently as October 2, 1990, corroborated by the arranged sale by Agent Pecis to [appellant] and [appellant's] payment of cash which occurred on October 11, 1990."

We agree with the trial court's evaluation. Nightingale provided more than a simple "tip" about appellant's activities. His information was extensive and recent. He had little incentive to lie about the proposed marijuana sale, since appellant's failure to participate would both discredit Nightingale and deny him his hoped-for reward. Even without knowing that law enforcement officers suspected Nightingale of drug trafficking, a reader of the affidavit would suspect, as did Pecis, that Nightingale was "dirty" in some way. Thus, the omitted information was largely cumulative and did not negate probable cause. (*People* v. *Kurland, supra*, 28 Cal.3d at pp. 393-394.)[9]

We do not condone the apparently intentional omissions of information about Nightingale in the search warrant affidavit in this case. The trial court was rightly troubled by these omissions, but found that the omitted information was not so material as to defeat probable cause. As the trial court impliedly found, in this instance the apparent coverup was potentially more serious than the information concealed.

Because we have held the affidavit was sufficient to establish probable cause, we do not address appellant's contention that the omissions show Pecis could not have believed in objective good faith that probable cause existed. (*United States* v. *Leon* (1984) 468 U.S. 897, 922-923 [82 L.Ed.2d 677, 698-699, 104 S.Ct. 3405]; *People* v. *Maestas, supra*, 204 Cal.App.3d at pp. 1214-1216.)

---

[9]Suspicions that Nightingale was involved in drug trafficking did not alone render his information unreliable. Although members of the Drug Task Force were unhappy with the large monetary payment they had heard Nightingale might receive, Pecis did not state that he regarded Nightingale's information as too unreliable to provide probable cause without confirmation through the anticipated controlled sale. Rather, he testified: "I will not say it was not sufficient. It was very slim. Basically it was corroborated only by one other policeman and I would not want to rest my reputation on that. Therefore it was made into a contingency warrant."

## DISPOSITION

The judgment is affirmed.

White, P. J., and Werdegar, J., concurred.