OPINION
This is an appeal by the State filed pursuant to Crim.R. 11(J) from the trial court's order suppressing evidence., Defendant, Roger D. Nathan, was charged by indictment with possession of marijuana in an amount equal to or exceeding twenty thousand grams. R.C. 2925.11(A), (C)((3)(f). He moved to suppress evidence seized by police from 1751 West Grand Avenue in Dayton. The seizure was authorized by a warrant to search that location. The trial court granted the motion to suppress on a finding that probable cause to issue the warrant was lacking. The court also suppressed evidence seized from Defendant's residence at 154 West Norman Avenue, likewise on his motion.
The facts found by the trial court are as follows:
 On or about August 24, 2000, information was provided to Officer Phillips of the Dayton Police Department by an informant concerning drug sales at a duplex at 1749 and 1751 West Grand Avenue. Phillips' informant had never been used as a confidential source before, so could not be designated "reliable." Nevertheless, on September 1, 2000, an "Anticipatory Search Warrant" for the duplex was obtained from Dayton Municipal court. This warrant set forth the allegations of the confidential informant as well as the conditions that the Municipal Judge found must occur before the warrant could be executed. These "anticipatory facts" were stated as follows:
 This search warrant will not be served unless one or both of the following criteria are met:
 1. That a confidential and reliable informant (CI) enters 1749 or 1751 W. Grand Avenue and makes a controlled buy of illegal drugs.
 2. That a confidential and reliable informant (CI) enters 1749 or 1751 W. Grand Avenue and sees illegal drugs.
 Detective Auricchio, a Dayton Police Officer, testified that the anticipatory search warrant was never served at either 1749 or 1751 W. Grand Avenue. Detective Auricchio testified that when the anticipatory warrant on September 1, 2000, was prepared, the officers "didn't have enough probable cause to serve the warrant . . ." Law enforcement officials were hoping to have one of the anticipatory factors listed in the Affidavit met in order to allow them to serve the warrant on the addresses at 1749 or 1751 W. Grand Avenue. It was apparent from the testimony that the warrant was never served inasmuch as the anticipatory facts never materialized.
 However, on or about September 7, 2000, a nearly identical warrant was issued from the Dayton Municipal Court for the residences at 1749-1751 W. Grand Avenue. The second warrant relied on the same information as the warrant issued on September 1, 2000. There was no further surveillance of evidence collected from the duplex or from the defendants between September 1 and September 7, 2000. The Dayton Police Department never observed the defendants engage in drug activity at 1749-1751 W. Grand Avenue. The Dayton Police Department had not received any drug complaints about these residences or these defendants between September 1 and September 7.
 On September 7, 2000, at approximately 8:00 p.m., uniformed officers Kevin Phillips and David House of the Dayton Police Department arrived next door at 1745 W. Grand Avenue in response to an old complaint about suspected drug sales from a vacant building. While at this address, the officers observed two African American males exit the rear of the duplex located at 1749-1751 W. Grand Avenue and get into a green Honda Civic. Officer Phillips testified that the individuals were not carrying anything that would cause an officer to believe they were committing a criminal offense. The officers quickly concluded their investigation at 1745 W. Grand Avenue and began to search for the Honda Civic.
 Once the Honda Civic left the rear of the residence, the uniformed officers pursued, located, and stopped the vehicle for a traffic violation. The officers offered testimony to the effect that the stop was a result of the vehicle's lack of a front license plate. However, the testimony revealed that no traffic citation was issued. However, the testimony revealed that no traffic citation was issued. The testimony from Officer Phillips was that the green Honda Civic was going to be stopped whether or not it had committed any traffic violation.
 Once the stop for the traffic violation had been effectuated, Officer House approached the driver's side of the vehicle and made contact with Defendant Nathan. Officer Phillips approached the passenger side and made contact with Defendant Martin. Officer House ordered Nathan out of the vehicle and proceeded to pat him down. The frisk produced no weapons or contraband. Officer House then escorted Nathan back to the police car and secured him in the cruiser's rear seat. Officer Phillips testified that after Nathan had been removed from the car, he saw a set of keys lying on the driver's side floorboard. Without a warrant and without consent to do so, Officer Phillips removed the keys from the floorboard of the Civic. At this point, additional members of the Dayton Police Department's anti-drug Strike Force arrived. Martin, the passenger, was removed from the Civic, patted down, and placed in the back seat of another police car. Officer Phillips then compared the keys he confiscated from the floorboard with the keys found in the ignition of the Civic. He determined that the keys found on the floor were not duplicates of the keys found in the vehicle's ignition. Defendants were then separately questioned about the keys and their presence in the vehicle. Id. At this point, the defendants were detained and were not free to leave. Subsequent to the detention of the defendants, Officer Phillips gave the keys from the floorboard to Officer Larremore, who took them to 1751 W. Grand Avenue. Officer Larremore discovered that the keys opened both the back and front doors to that residence. As a result of Officer Larremore's discovery, a drug dog was called to the scene of the traffic stop. The defendants continued to be detained throughout the 35-40 minutes while the canine unit arrived and completed a sweep of the vehicle. The testimony at the hearing revealed that the dog alerted to the defendant's vehicle. The Civic was then thoroughly searched, yielding no drugs, weapons or contraband. Nevertheless, Detective Auricchio ordered that the detention of the defendants continue and they be transported to the Safety Building for questioning. Detective Auricchio testified that he justified the detention of the defendants on his belief that the defendants had committed the crime of possessing a large quantity of marijuana.
 The initial stop and detection of the defendants occurred before 8:00 p.m. on September 7, 2000. The detention, search of the vehicle, the seizing of the keys to the residence on West Grand Avenue, the search by the drug dog, the questioning at the scene, and the transporting of the defendants took place between approximately 8:00 p.m. and 11:30 p.m. when a warrant for 1749 and 1751 W. Grand Avenue was signed by a
 Dayton Municipal Court Judge. Despite being held for over three and one-half hours, the testimony at the hearing by the officers was that the defendants were not under arrest. The testimony was that they were simply detained on the basis of a traffic stop. This prolonged detention was done despite the officers' acknowledging that the offense for not having a front license plate was a minor misdemeanor offense which is not a violation that could have caused an arrest to be effectuated. Dayton Police Officers conducted the search of the residence at 1749-1751 W. Grand Avenue and then placed the defendants under arrest. Immediately following the search, at approximately 1:19 a.m., Defendant Nathan consented to a search of his residence at 154 W. Norman Avenue, Apartment #1.
The trial court suppressed evidence seized from the search of 1749-1751 West Grand Avenue pursuant to the September 7, 2000 warrant.* The court held that, because probable cause was lacking for the previous "anticipatory warrant" issued on September 1, 2000, and no further facts were presented to obtain the September 7, 2000 warrant other than those obtained as a result of Defendant's detention, which was illegal for those purposes because it was unreasonably prolonged, the September 7, 2000 warrant likewise lacked probable cause. The court also suppressed evidence seized from Defendant's apartment at 154 West Norman Avenue on a finding that the consent he gave was not voluntary because it was a product of his unreasonable detention.
 FIRST ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN DETERMINING THE SEARCH WARRANT OBTAINED ON SEPTEMBER 7, 2000 WAS NOT ISSUED UPON A SUFFICIENT SHOWING OF PROBABLE CAUSE TO BELIEVE EVIDENCE OF CRIMINAL ACTIVITY WOULD BE FOUND AT 1749-1751 WEST GRAND AVENUE.
In determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, the task of the issuing magistrate is simply to make a practical, common sense decision whether, given all of the circumstances set forth in the affidavit, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. Illinois v. Gates (1983),462 U.S. 213; State v. George (1989), 45 Ohio St.3d 325.
When reviewing the sufficiency of probable cause in a search warrant issued by a magistrate, neither a trial court nor an appellate court should substitute its judgment for that of the magistrate by conducing a de novo determination as to whether the affidavit submitted in support of the search warrant establishes probable cause. Rather, the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. Great deference should be accorded to the magistrate's probable cause determination, and doubtful or marginal cases should be resolved in favor of the warrant. Id.
On September 1, 2000, police obtained an "anticipatory search warrant" for 1751 W. Grand Avenue from the Dayton Municipal Court. Although this warrant was never executed and its validity is not an issue in this appeal, because of the dangers inherent in anticipatory search warrants and the very narrow circumstances in which they properly apply, some observations are appropriate.
Consistent with the Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution, search warrants must be based on averments that establish probable cause to believe that contraband or evidence of a crime will be found at the particular place to be searched. Typically, those averments portray facts which establish that the evidence sought is presently at the location concerned. Whether the averments are factually and legally sufficient for those purposes are issues which must be determined by a neutral and detached magistrate. Berger v. New York (1967), 388 U.S. 41.
When the evidence to be seized is not yet at the place to be searched, probable cause to presently search cannot be said to exist. Nevertheless, when the facts presented to the issuing magistrate demonstrate that the evidence to be seized is on a sure and irreversible course toward the place to be searched, an "anticipatory warrant" may issue on a showing of probable cause that at some future time, though not presently, evidence of a crime will be located at a specific place to be searched. State v. Folk (1991), 74 Ohio App.3d 468.
The rationale for allowing anticipatory search warrants, which is founded on the judicial preference for searches conducted pursuant to a warrant, is that it may be reasonable for a magistrate to conclude that specific, objectively evident events that are almost certain to occur in the near future will be sufficient to create probable cause, and therefore demonstrate probable cause to believe that the evidence to be seized will be located at the specific place to be searched when the authorized search occurs. Folk, supra.
Anticipatory search warrants are often issued where the post office or a freight delivery company are to make a "controlled delivery" of a package containing contraband within a few hours to a specific address, and responsible officials so advise the magistrate. Folk, supra. Under those circumstances, the facts presented to the magistrate establish probable cause to believe that when delivery is made the evidence to be seized will be in the place to be searched when that search occurs. Thus, there is no probable cause defect. Folk, supra.
Anticipatory search warrants typically involve very specific, objectively determined events which must occur before probable cause to search exists and the warrant can be executed by police officers. This serves to limit the discretion of the officers executing the warrant. In the case of a typical "controlled delivery," the triggering event is simply delivery of the package containing contraband to the specific place to be searched and its acceptance by some person located there. This is an objective fact, easily verified, which requires no independent analysis by the officers executing the warrant of the meaning or significance of the delivery.
In this case the triggering event permitting execution of the September 1, 2000 anticipatory search warrant was:
Anticipatory Facts:
 This search warrant will not be served unless one or both of the following criteria are met:
 1. That a confidential and reliable informant (CI) enters 1749 or 1751 W. Grand Avenue and makes a controlled buy of illegal drugs.
 2. That a confidential and reliable informant (CI) enters 1749 or 1751 W. Grand Avenue and sees illegal drugs.
At the outset, we note that whether or not an informant at some time in the future will enter a particular residence and observe illegal drugs or purchase drugs there is an event that is neither objectively-determined nor certain to occur, unlike a "controlled delivery" of contraband to the place to be searched. See State v. Canelo (New Hampshire 1995),653 A.2d 1097.
More troubling is the fact that the triggering events in this case do not sufficiently limit the discretion of the officers executing the anticipatory search warrant. Here, it is left to the discretion of the officers to determine whether the informant, while inside the place to be searched, in fact observed or purchased what are in fact illegal drugs. This requires a weighing of the evidence and illustrates the risk inherent in anticipatory search warrants: that the issuing magistrate may abdicate to police officers executing the warrant a judicial function of determining whether probable cause exists to believe that the property to be seized will be in the specific place to be searched when that search occurs. United States v. Hendricks (9th Cir., 1984), 743 F.2d 653.
We believe that the September 1, 2000 anticipatory search warrant issued in this case to search the premises concerned does not conform toFourth Amendment requirements for such warrants. We recommend caution when seeking to utilize anticipatory search warrants outside the "controlled delivery" context in which they are customarily applied.
The motion to suppress attacked the September 7, 2000 warrant that was issued to search 1751 West Grand Avenue for lack of probable cause, not the September 1, 2000 "anticipatory warrant." The trial court found that the averments on which the September 7 warrant was issued were no different than those presented to obtain the "anticipatory warrant," which were insufficient. However, the record demonstrates that additional facts material to the probable cause finding were presented.
The affidavit submitted in support of the September 1, 2000 "anticipatory search warrant" recited a tip police had received on August 24, 2000, from a confidential informant regarding large quantities of marijuana that were sold from the residence located at 1751 W. Grand Avenue. The tip included physical descriptions of the residence, the two suspects, and a suspect vehicle frequently parked in the backyard of the vacant house next door. Subsequent police surveillance corroborated the description of the residence and the suspect vehicle.
The affidavit submitted in support of the September 7, 2000 search warrant contained the same information found in the September 1, 2000 warrant application. Contrary to the trial court's findings of fact, however, the September 7, 2000 search warrant affidavit contained substantial additional information at paragraphs F and G, not found in the September 1, 2000 warrant.
The September 7, 2000 warrant application included the fact that on August 31, 2000, the confidential informant advised police that he was inside the residence at 1751 W. Grand Avenue on that date and had observed the two previously described suspects selling marijuana. The application for the September 7, 2000 warrant also included an averment that on that same date, while police were next door at 1745 W. Grand Avenue investigating complaints of drug activity at that vacant residence, officers observed the two suspects described by the confidential informant run out the back door of 1751 W. Grand Avenue, get into a green Honda, and drive away at a high rate of speed.
Other new averments in the application for the September 7 warrant recite that at about the same time as the green Honda sped away, Officer Goodwill, one of the officers who was investigating possible drug activity at 1745 W. Grand Avenue, smelled a strong odor of raw marijuana coming from inside 1751 W. Grand Avenue. The odor became stronger as Officer Goodwill walked closer to 1751 W. Grand Avenue. Officer Goodwill has spent the last eight years working with the drug task force and stated that he is very familiar with the odor of marijuana in both its raw or burnt states. Such evidence has been found sufficient to demonstrate probable cause to issue a warrant. Johnson v. United States (1948), 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436. All of this additional information appears in the September 7, 2000 warrant but not in the September 1, 2000 warrant, and was acquired by police before they pursued and stopped Defendant's green Honda., Defendant contended at oral argument that the trial court, not having considered the foregoing additional evidence, necessarily rejected its probative value in relation to the probable cause finding the magistrate made. However, Defendant's motion to suppress did not allege that the evidence involved was perjured and should be rejected. See Franks v. Delaware (1978), 438 U.S. 154,98 S.Ct. 2674, 57 L.Ed.2d 667. More to the point, the court made no such finding. It is more likely that the court simply overlooked this additional evidence, perhaps as a result of Defendant's assertion in his March 5, 2001 Memorandum In Support of Defendant's Motion To Suppress that the September 7, 2001 warrant was "based on the same information available to the officers when they did not previously have probable cause" for the September 1, 2000 "anticipatory warrant." Id., at p. 12. The assertion was incorrect.
The application for the September 7, 2000 warrant contains still more information in paragraph G., not found in the September 1, 2000 warrant. This is information, however, that police acquired after pursuing and stopping the green Honda containing Defendant and his companion. The trial court held that the stop of Defendant's vehicle, though a valid traffic stop at its inception, became an illegal seizure when the scope and duration of that stop far exceeded the detention necessary to effectuate the original purpose of the stop, which was to issue a traffic citation for no front license place. The trial court found that there was no reasonable suspicion of other criminal activity independent of the traffic stop to justify the expanded investigation and prolonged detention of Defendant, and accordingly suppressed all evidence seized as a result of the stop of Defendant's vehicle.
The information that police acquired after stopping Defendant's green Honda, which is the vehicle identified in the September 7, 2000 search warrant affidavit, includes the fact that after Defendant was removed from the vehicle police discovered and retrieved a set of keys from the driver's side floor area. Both Defendant and his passenger denied ownership of the keys. Police took the keys to 1751 W. Grand Avenue and discovered that they opened the locks on both the front and back doors of that residence. While police officers were testing the keys in the locks at 1751 W. Grand Avenue, they smelled a strong odor of marijuana coming from inside that residence.
At that point a drug dog was called to the scene of the traffic stop. The dog alerted to Defendant's green Honda, but a search of the vehicle failed to reveal any drugs. When asked for some reason why the dog alerted to the car, Defendant's passenger stated that Defendant's girlfriend had recently smoked marijuana in the car. Police did not find any ashes or "roaches" in the car and there was no smell of burnt marijuana emanating from it.
We do not agree that the detention of Defendant and his companion was illegal because it was unreasonably prolonged. (See Assignment of Error Two.) However, even removing from the affidavit submitted in support of the September 7, 2000 search warrant all of the information that police acquired after stopping Defendant's green Honda, we conclude that the remaining averments provide a substantial basis for the magistrate's conclusion that there was a fair probability that contraband or evidence of a crime would be found inside 1751 W. Grand Avenue. See Illinois v. Gates, supra; State v. George, supra; State v. Smith (1997),117 Ohio App.3d 656 . Considering only that information, the totality of those facts and circumstances, standing alone, constitutes sufficient probable cause to search 1751 W. Grand Avenue, and thus the September 7, 2000 warrant remains valid. Smith, supra. Of particular significance is the fact that a police officer working in the drug unit who is familiar with the odor of marijuana, smelled a strong odor of marijuana emanating from inside 1751 W. Grand Avenue. See State v. Moore (2000),90 Ohio St.3d 47. The fact that other officers had not, a fact revealed at the hearing on the motion to suppress, is immaterial because that fact was not before the issuing magistrate. See State v. Gerace (Feb. 19, 1986), Summit App. No. 12177, unreported.
The State's first assignment of error is sustained. The trial court erred in suppressing the evidence seized from 1751 W. Grand Avenue pursuant to the September 7, 2000 search warrant. The trial court's ruling suppressing that evidence will be reversed, and the matter remanded to the trial court for further proceedings.
 SECOND ASSIGNMENT OF ERROR THE TRIAL COURT ERRED BY CONCLUDING THAT ALL EVIDENCE OBTAINED FROM THE TRAFFIC STOP AND THE SEARCH OF APPELLEE NATHAN'S APARTMENT MUST BE SUPPRESSED. THE LENGTH OF TIME APPELLEE WAS DETAINED AS A RESULT OF THE TRAFFIC STOP IS OF NO CONSEQUENCE SINCE THE OFFICERS HAD PROBABLE CAUSE TO ARREST APPELLEE FOR POSSESSION OF MARIJUANA IMMEDIATELY UPON INITIATING THE TRAFFIC STOP.
In addition to suppressing the physical evidence seized from 1751 W. Grand Avenue pursuant to the September 7, 2000 search warrant, which we addressed in the first assignment of error, the trial court also suppressed all evidence seized as a result of the traffic stop on Defendant's green Honda and all evidence seized by police after Defendant consented to a search of his apartment located at 154 W. Norman Avenue, Dayton. In this assignment of error the State challenges those two suppression rulings.
 Traffic Stop
As we previously observed, the trial court held that the September 7, 2000 traffic stop police made on Defendant's green Honda for no front license plate, while valid at its inception, turned into an illegal seizure/arrest because the scope and unreasonably lengthy duration of that stop far exceeded what was necessary to accomplish the purpose of that stop, to issue a traffic citation. The trial court found insufficient reasonable suspicion of other criminal activity, unrelated to the traffic violation, to justify the three and one-half hour detention of Defendant following the traffic stop and prior to the issuance of the search warrant for 1751 W. Grand Avenue. Accordingly, the trial court suppressed any and all evidence seized by police as a result of the traffic stop. This would presumably include evidence such as the set of keys police recovered from Defendant's vehicle which fit the locks on the doors at 1751 W. Grand Avenue, and thus connected Defendant to that residence where police discovered a large quantity of marijuana during their warrant authorized search.
In arguing that the trial court erred in suppressing any and all evidence obtained as a result of the traffic stop, the State asserts that whether the scope and duration of that stop exceeded what was necessary to accomplish the purpose of the stop is of no consequence because at the time police stopped Defendant's vehicle for the traffic violation the officers had probable cause to arrest Defendant for possession of marijuana. We agree.
A warrantless arrest is constitutionally valid if at the time it is made the arresting officer had probable cause to make it. Beck v. Ohio (1964), 379 U.S. 89; State v. Timson (1974), 38 Ohio St.2d 122. The test for establishing probable cause to arrest is whether the totality of the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent individual in believing that Defendant had committed or was committing an offense. Beck v. Ohio, supra. The arresting officer's subjective belief or motivation in detaining an individual is immaterial to the legality of that detention. The test is whether there was objective justification for the detention and arrest. State v. Robinette (1997), 80 Ohio St.3d 234; Dayton v. Erickson (1996), 76 Ohio St.3d 3.
Prior to stopping Defendant's vehicle on September 7, 2000, police had a tip on August 24, 2000, from a confidential informant regarding two suspects described by the informant that were selling large quantities of marijuana out of the residence located at 1751 W. Grand Avenue. As a result of their own observations, police corroborated some details of the tip regarding the description of the residence and the vehicles associated with the suspects.
On August 31, 2000, the same informant contacted police and advised that on that date the informant had been inside 1751 W. Grand Avenue and observed the two suspects selling marijuana. An anonymous tip, without more, is not sufficient to justify stopping and detaining a person. Florida v. J.L. (2000), 529 U.S. 266; State v. Riley (Feb. 16, 2001), Montgomery App. No. 18458, unreported. By the time police stopped Defendant's green Honda on September 7, 2000, however, police had much more than just an anonymous tip.
On September 7, 2000, while police officers were investigating possible drug activity at 1745 W. Grand Avenue, a vacant house which is next door to 1751, the officers observed two men matching the description of the suspects given by the confidential informant run out the back door of 1751 W. Grand Avenue, get into a green Honda, and drive away at a high rate of speed. At about that same time Officer Goodwill, one of the officers investigating drug activity at 1745 W. Grand Avenue, smelled a strong odor of raw marijuana coming from inside 1751. The odor became stronger as Officer Goodwill walked closer to 1751. Officer Goodwill, a veteran police officer with several years of experience with the drug unit, is very familiar with the odor of marijuana in either a raw or burnt state.
These facts and circumstances, when viewed in their totality, are sufficient to warrant a prudent individual in believing that Defendant had committed or was committing an offense at 1751 W. Grand Avenue, possession of marijuana. Thus, police had probable cause to arrest Defendant for that offense at the time they stopped his green Honda for a traffic offense. The existence of probable cause to arrest Defendant for possession of marijuana at the time the traffic stop was initiated makes the issue regarding the scope and duration of that traffic stop inconsequential, at least with respect to the evidence police then seized. The trial court erred in suppressing any and all evidence seized by police as a result of the traffic stop.
 Norman Avenue Apartment
Although it is unclear from the record before us what evidence, if any, was seized from Defendant's Norman Avenue apartment after police searched that residence pursuant to Defendant's consent, the trial court suppressed any evidence discovered during that search. The trial court held that Defendant's consent to search his Norman Avenue apartment was invalid because he was unlawfully in custody at that time, Defendant's prolonged detention following the traffic stop having turned into an illegal arrest absent any reasonable suspicion that developed during the stop justifying an expanded investigation. Thus, the trial court concluded that any evidence recovered subsequent to Defendant's illegal arrest was "fruit of the poisonous tree." See Wong Sun v. United States (1963), 371 U.S. 471.
Contrary to the trial court's conclusion, however, Defendant's consent was not the product of an illegal detention. As we noted earlier, police had probable cause to arrest Defendant for possession of marijuana in connection with activities occurring at 1751 W. Grand Avenue at the time Defendant's green Honda was stopped for a traffic violation on September 7, 2000. Thus, Defendant's detention and arrest was lawful. Absent any evidence that police officers used some form of coercion or duress, a lawful arrest or detention does not per se invalidate an otherwise voluntary consent to search. United States v. Watson (1976), 423 U.S. 411; United States v. Mendenhall (1980), 446 U.S. 544; State v. Simmons (1989), 61 Ohio App.3d 514. The trial court erred in suppressing any and all evidence recovered from Defendant's Norman Avenue apartment pursuant to Defendant's consent to search that residence.
The State's second assignment of error is sustained.
 Conclusion
The trial court's suppression of evidence seized by police as a result of the traffic stop and Defendant's consent to search his Normal Avenue apartment will be reversed, and the matter remanded to the trial court for further proceedings.
WOLFF, P.J. and FAIN, J., concur.
* The State did not raise the issue of Defendant's standing to object to the search of this location, though it is unclear what, if any, possesory interest he had in it.