**STATE of Alaska, Petitioner,**

v.

**Myron GUTMAN, Respondent.**

No. 7262.

Court of Appeals of Alaska.

Oct. 21, 1983.

Bill D. Murphree, Asst. Atty. Gen., Harry L. Davis, Dist. Atty., and Wilson L. Condon, Atty. Gen., Juneau, for petitioner.

Dick L. Madson, Cowper & Madson, Fairbanks, for respondent.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

Myron Gutman was charged with one count of possession of cocaine for sale, two counts of sale of cocaine, and two counts of theft by receiving in the second degree. The charges were based in large part on evidence gathered at Gutman's residence pursuant to two search warrants executed by police on July 21, 1982. After being indicted, Gutman moved to suppress all evidence obtained pursuant to the warrants. On November 3, 1982, Fairbanks Superior Court Judge James R. Blair entered an order granting Gutman's suppression motion. Judge Blair based his ruling on the conclusion that the initial warrant, upon which the second warrant was based, was an improper anticipatory warrant. The state petitioned this court for review of Judge Blair's ruling, and we granted the petition. We now reverse.

On the afternoon of July 21, 1982, Fairbanks Police Officer Wilbur Hooks, accompanied by an assistant district attorney, appeared before District Court Judge Ed Crutchfield in Fairbanks and requested the issuance of three warrants. Officer Hooks submitted an affidavit in support of his request for the first warrant, which was for electronic surveillance and recording of a conversation between a police informant identified as "WH–8," and a person known as "Alvalina."[1] The following facts were included in Officer Hooks's affidavit:

1. WH–8 is a confidential informant who has agreed to work in an undercover capacity and assist your affiant in investigating illegal drug sales that take place in the Fairbanks community.

2. At approximately 4:30 p.m., on July 19, 1982, WH–8 contacted your affiant in person and informed your affiant that WH–8 had spoken with a female known as "Alvalina" on this date and, in that conversation, "Alvalina" agreed to meet WH–8 at 1620 Washington Drive, Apartment # 27, and sell WH–8 one-quarter ounce of Cocaine.

3. WH–8 further informed your affiant that "Alvalina" told WH–8 that she was getting her Cocaine from Michael GUTMAN and that all she had to do was to call Michael GUTMAN on the telephone and that he would deliver whatever amount of Cocaine that she needed.

4. WH–8 also informed your affiant that WH–8 has observed Michael GUTMAN deliver Cocaine to 1620 Washington Drive, Apartment # 27, on numerous occasions.

5. WH–8 intends to meet "Alvalina" in an undercover capacity and make a controlled drug purchase from "Alvalina" and do so while WH–8 is carrying transmitting and recording equipment so that the nature of the conversation between WH–8 and "Alvalina" can be proven at a later date.

Officer Hooks was also called as a witness before Judge Crutchfield and presented sworn testimony to supplement his initial warrant request and to support a request for two additional search warrants. In addition to reaffirming the facts contained in his affidavit, Officer Hooks told Judge Crutchfield that WH–8 had contacted him again that same day, July 21, at about 3:30 p.m., to confirm that Alvalina had contacted him and was ready to go through with the sale as planned. Hooks indicated that the sale would be arranged as soon as possible. Hooks stated that officers would be positioned where they could observe Alvalina's apartment and electronically monitor any conversation between Alvalina and WH–8 in or near the apartment. Officers would also be assigned to maintain visual surveillance of Gutman's house and to follow Gutman in the event he left his house to meet with Alvalina. Hooks testified that marked money would be used by WH–8 to pay for any drugs sold to him by Alvalina.

Based on Officer Hooks's testimony, the state requested two warrants in addition to the warrant for surveillance of the conversation between WH–8 and Alvalina: first, the state asked for issuance of a warrant to search Alvalina's apartment; second, the state sought a warrant to search Gutman's house. The state expressly indicated that these warrants were to be anticipatory in nature and would become effective only in the event the transaction involving WH–8, Alvalina and Gutman occurred as planned.

Judge Crutchfield, after indicating that Officer Hooks's written affidavit would be incorporated by reference and considered along with the testimony supporting the request to search both Alvalina's and Gutman's residences, issued all three warrants. Before issuing the search warrant for Gutman's house, Judge Crutchfield expressly elicited from Officer Hooks and the assistant district attorney statements assuring

---

1. The warrant for electronic surveillance of the conversation between WH–8 and Alvalina was sought pursuant to *State v. Glass,* 596 P.2d 10 (Alaska 1979).

that the warrant for Gutman's house would be contingent upon the occurrence of (1) a meeting between Alvalina and WH–8 for the purpose of consummating the cocaine sale; (2) the placement of a telephone call by Alvalina, ostensibly to Gutman, during the course of the meeting, followed by observation of Gutman leaving his apartment and meeting with Alvalina; and (3) the actual sale of cocaine by Alvalina to WH–8 after her meeting with Gutman. The search warrant for Gutman's house expressly provided for the search to occur "at any time after the contingent event alleged in the testimony . . . ."

Fairbanks police followed through with the plan Officer Hooks described to Judge Crutchfield. WH–8 met with Alvalina, obtained a quantity of cocaine, and gave Alvalina marked money in return.[2] Police were able to observe WH–8 as he initially contacted Alvalina on the porch of her apartment building; the transaction was electronically monitored. Alvalina left several times during the transaction to visit another apartment. At least once, Alvalina indicated that she was going to make a phone call; upon her return, she told WH–8 the exact price that she would charge for the cocaine, and stated that "Mike" Gutman would be over in a half-hour.

Soon after Alvalina told WH–8 that Gutman would come, police saw Gutman leave his house and drive away in his car. Shortly thereafter, police saw Gutman meet briefly with Alvalina in front of her apartment building; enough time elapsed to allow for an exchange of money and cocaine. Alvalina then returned to her apartment and sold the cocaine to WH–8. After meeting with Alvalina, Gutman returned to his house. At that time police served him with the warrant authorizing the search of his residence. During the search, police seized marked money, cocaine and paraphernalia. They also observed a considerable amount of property they suspected to be stolen.

Subsequently, police obtained an additional warrant and conducted a renewed search, this time for stolen property. The second search of Gutman's house yielded a number of stolen articles that served as the basis for charging Gutman with theft by receiving.

In his motion to suppress the evidence seized from his house, Gutman argued that probable cause did not exist to justify the anticipatory search warrant. Judge Blair granted Gutman's suppression motion. Specifically, Judge Blair indicated that although he recognized anticipatory warrants were not *per se* improper, in this case he thought the duty of finding probable cause had been impermissibly shifted from a neutral and detached magistrate to police in the field. Judge Blair stated, in relevant part:

> Proper procedure as I see it in this case would have been to give the same information to the magistrate preparatory to the anticipated incident in this case. Then with the facts that became evident simply make a phone call to the same magistrate and say the material we told you would happen did happen. You now have probable cause and is the warrant issued [?] and the magistrate presumably would have said yes. That would have satisfied the problems of *Aguilar* that a crime existed and there would have been probable cause to issue a warrant at that [stage]. However, at the time the warrant issued in this case, there had been no crime committed and it was in fact left entirely up to the police to determine whether or not there was probable cause to use a warrant . . . .

■ In reviewing Judge Blair's ruling, we must determine whether the conclusions that he made were clearly erroneous. However, to the extent that Judge Blair's ruling was premised on an interpretation of the adequacy of the evidence supporting the search warrant for Gutman's residence, our

---

**2.** The precise circumstances of the transaction involving WH–8, Alvalina and Gutman are not reflected in the record, since Judge Blair's suppression order was issued without an evidentiary hearing. However, there appears to be little dispute between the parties as to these circumstances. Our statement of the circumstances is based on the facts contained in the memoranda submitted by the parties.

review must be tempered by the need to give great deference to Judge Crutchfield's original determination of probable cause. We must resolve doubtful or marginal questions concerning interpretation of this evidence in a manner that will validate the warrant and reflect the preference traditionally accorded to warrants. *Rosa v. State,* 633 P.2d 1027, 1029 (Alaska App. 1981). Moreover, in resolving uncertainties and ambiguities we need not artificially limit our inquiry to the warrant and its supporting affidavit and testimony. Instead, we may base our determination on a realistic appraisal of the circumstances surrounding the issuance of the warrant. *Johnson v. State,* 617 P.2d 1117, 1122 (Alaska 1980).

With this perspective in mind, we proceed to evaluate the sufficiency of Officer Hook's affidavit and testimony to establish probable cause for issuance of the anticipatory warrant permitting search of Gutman's house.[3]

■ When realistically viewed, Officer Hooks's affidavit and testimony were sufficient to establish probable cause to believe that Alvalina would sell cocaine to WH–8 at her apartment and that the transaction would occur on the day of application for the search warrant. Alvalina had previously informed WH–8 of her willingness and ability to sell a specific quantity of cocaine to him, and immediately prior to Officer Hook's testimony, Alvalina had informed WH–8 of her continued willingness and immediate availability to complete the transaction. Evidence of Alvalina's willingness to carry out her part of the transaction was supported by WH–8's observations of frequent cocaine deliveries to Alvalina at her apartment.

In addition, there was ample evidence to establish the likelihood of Gutman's personal participation in the imminent sale. Alvalina's repeated references to Gutman as her source, her representation that he was continuously available, and WH–8's independent observation of Gutman making numerous deliveries of cocaine to Alvalina's apartment could all properly be relied upon by Judge Crutchfield to find probable cause to believe that Gutman was to play a part in the anticipated cocaine sale.

Finally, the state presented adequate information to Judge Crutchfield linking Gutman's drug related activities to his residence. According to Officer Hooks's affidavit, Alvalina had told WH–8 that "all she had to do was to call Michael Gutman on the telephone and . . . he would deliver whatever amount of cocaine . . . she needed." Admittedly, evidence of the link between Gutman's drug related activities and his residence is weaker than the information establishing that a sale of cocaine by Alvalina to WH–8 was in the immediate offing and that Gutman was a likely participant in the sale. Nevertheless, when we bear in mind the need to resolve ambiguities and doubts in favor of upholding the warrant, we believe that it is minimally sufficient to support a reasonable belief that there would likely be a nexus between the anticipated sale and Gutman's residence. *See Snyder v. State,* 661 P.2d 638, 645–46 (Alaska App.1982). *See also State v. Witwer,* 642 P.2d 828, 832 (Alaska App. 1982) (where affidavit described two prior occasions where a third party entered residence without cocaine and left with cocaine,

---

**3.** Gutman's motion to suppress evidence asserted a number of grounds in addition to lack of probable cause for issuance of an anticipatory warrant. One of these grounds was that the warrant was based upon unreliable information from sources whose truthfulness was not adequately demonstrated. Judge Blair's finding of insufficient probable cause, however, rendered moot the additional arguments raised by Gutman; these other arguments were not ruled upon by Judge Blair, and they are not properly before us on review. Accordingly, in evaluating the probable cause issue, we assume that the truthfulness of Officer Hooks's sources and the reliability of their information were adequately established through the affidavit and testimony presented to Judge Crutchfield. Our disposition of this case is not intended to foreclose consideration by Judge Blair, upon remand, of arguments that were left undecided by his suppression order and have not been ruled upon in this opinion.

search warrant to be executed only upon a third occasion was supported by probable cause).

We next consider whether this showing of probable cause was adequate to support the issuance of an anticipatory warrant, as opposed to a traditional warrant authorizing an immediate search. This difficult issue appears to have been at the heart of Judge Blair's doubts concerning the adequacy of the warrant for the search of Gutman's residence.

The use of anticipatory warrants has long been accepted, although their frequent use appears to be a recent phenomenon. *See generally* 1 W.R. LaFave, *Search and Seizure* § 3.7(c) (1978). The Alaska Supreme Court expressly approved the use of an anticipatory warrant for the first time in *Johnson v. State,* 617 P.2d 1117, 1124 (Alaska 1980). This court has subsequently upheld the use of an anticipatory search warrant in a case that is, in many respects, similar to Gutman's. *State v. Witwer,* 642 P.2d 828, 833 (Alaska App.1982).

■ However, there continues to be considerable confusion about the distinction between a valid anticipatory warrant and a premature warrant: a warrant rendered invalid because it is issued before evidence of a crime occurs. We believe this distinction can be more easily understood by referring to Professor LaFave's definition of a proper anticipatory warrant. Professor LaFave states that an anticipatory search warrant is "a warrant based upon an affidavit showing probable cause that at some future time (but not presently) certain evidence of crime will be located at a specified place." 1 W.R. LaFave, *supra,* § 3.7(c) at 698.

■ Perhaps the single most important aspect of this definition is the implicit re-quirement that probable cause to believe evidence of a crime will exist at a certain location in the future must be established when the warrant is issued. Once a judge or magistrate is presented with evidence meeting this implicit requirement, he may issue an anticipatory warrant if the warrant sets forth specific, objective criteria that are sufficient to assure that officers will not execute the warrant prematurely, that is, before the evidence is in place. As stated by the Alaska Supreme Court in *Johnson v. State,* 617 P.2d at 1124 n. 11:

> For an anticipatory warrant to be valid, there must be probable cause to believe that the items to be seized will be at the place to be searched at the time the warrant is executed, or in other words, that the warrant will not be prematurely executed.[4]

■ By contrast, when an anticipatory warrant is issued on the mere speculation that evidence of a crime might be found at a given location at some future time, the warrant will lack probable cause and will therefore be invalid regardless of the extent to which express provisions of the warrant assure that a search will not be commenced until probable cause actually exists. This distinction is exemplified by *State v. Vitale,* 23 Ariz.App. 37, 530 P.2d 394 (1975), a case that Judge Blair specifically relied upon in reaching his conclusion that there was no probable cause for an anticipatory warrant.

In *Vitale,* an informant told police that he had sold property to Vitale at Vitale's pawn shop and that he had told Vitale that the property was stolen. The informant made an agreement with the police to sell Vitale a stolen television and to tape record the transaction. The police obtained a search warrant, contingent upon this sale, even though the informant had made no

---

4. *See also* 1 W.R. LaFave, *supra,* § 3.7(c) at 701–02:

[T]here is no probable cause defect in an anticipatory warrant "as long as the evidence creates substantial probability that the seizable property will be on the premises when

searched." It is important, therefore, that the affidavit for an anticipatory warrant indicate how it is known that the items to be seized will on a later occasion be at the place specified. [footnote omitted].

arrangements with Vitale to make the sale and had not recently dealt with Vitale. The Arizona Court of Appeals held the warrant invalid stating that at the time it was issued, no crime had been committed, no crime was in progress, and "it was a matter of pure speculation whether one would be committed in the future." *Id. See also United States v. Roberts,* 333 F.Supp. 786, 787 (E.D.Tenn.1971) (search warrant will not issue upon an affidavit reciting only the anticipation of a future offense); *Campbell v. Rundle,* 327 F.2d 153, 162–63 (3d Cir. 1964) (no probable cause because no showing that law was about to be violated).

▆▆ When we assess the circumstances of the present case in light of the standards for a valid anticipatory warrant described by Professor LaFave and adopted in *Johnson v. State,* and when we compare these circumstances to those of cases such as *State v. Vitale,* where warrants have been held invalid because prematurely issued, it becomes apparent that the anticipatory search warrant for Gutman's residence did not leave determination of probable cause in the hands of the police and was not premature. When Judge Crutchfield issued the anticipatory search warrant for Gut-

man's house, he had probable cause to believe that Gutman would be involved in a cocaine sale, that his residence would be linked to the sale, and that the sale would occur in the immediate future. The likelihood of the sale and the nexus of the sale to Gutman's residence were established *prior* to issuance of the warrant, and thus the warrant was not based on mere speculation as to the possible occurrence of future criminal activity.

▆▆ Furthermore, Judge Crutchfield made adequate provision on the face of the warrant to prevent its premature execution. The judge elicited statements from both Officer Hooks and the prosecutor as to the specific anticipated events upon which execution of the warrant would be contingent. The warrant, on its face, incorporated these contingent events by reference, in compliance with the requirement of *Johnson v. State,* 617 P.2d at 1124 n. 11.[5]

▆▆ We conclude that the search warrant for Gutman's residence issued by Judge Crutchfield complied with traditional requirements for anticipatory warrants, as well as with the specific requirements adopted by the Alaska Supreme Court. We

---

**5.** In ruling on Gutman's motion to suppress, Judge Blair indicated that the police should have called Judge Crutchfield upon the occurrence of the contingent events and obtained his determination, at that time, that probable cause to search Gutman's residence existed. This approach would certainly have been a permissible one. *See* 1 W.R. LaFave, *supra,* § 3.7(c) at 703. We would encourage judges and magistrates who are requested to issue anticipatory search warrants to give serious consideration to the use of the approach suggested by Judge Blair, particularly in light of the newly adopted provisions of AS 12.35.015, which authorizes the issuance of telephonic search warrants. It is nevertheless clear that the Alaska Supreme Court has not made the use of this approach a prerequisite to issuance of a valid anticipatory warrant. *See Johnson v. State,* 617 P.2d at 1124 n. 11.

We note, however, that the court in *Johnson* did expressly urge judges and magistrates who issue anticipatory warrants to guard against the danger of premature service by stating clearly on the face of the warrant the contingent events that are intended to signal com-

mencement of the time for execution. In this case, it would have been preferable if Judge Crutchfield had described with particularity the anticipated circumstances that were to trigger the search of Gutman's residence. Such a description would have minimized the possibility of misunderstanding and provided additional guidance to officers involved in the search who were not present at the warrant proceedings.

As we have indicated, however, the contingent events intended to be applicable to the anticipatory warrant in this case were made clear on the record of the warrant proceedings by Judge Crutchfield's questioning of Officer Hooks and the state prosecutor. We believe that under these circumstances, the incorporation by reference in the warrant of these contingent events was at least minimally sufficient to satisfy the requirements of *Johnson v. State. Cf. Namen v. State,* 665 P.2d 557, 564–65 (Alaska App.1983) (incorporation by reference in a search warrant of an inventory of stolen property would have satisfied the constitutional requirement of particularity if the inventory had been made part of the record of proceedings when police applied for the warrant).

therefore hold that Judge Blair erred in holding that sufficient probable cause had not been established to support issuance of the anticipatory warrant. Because Judge Blair's determination as to the invalidity of the second search warrant for Gutman's residence was based entirely upon the finding that the second warrant was obtained by use of evidence derived from the execution of the initial, anticipatory warrant, it follows that Judge Blair also erred in ordering suppression of evidence seized pursuant to the second warrant.

The suppression order entered by the superior court is REVERSED and this case is REMANDED for further proceedings.