Betty J. MAGEE, Appellant,

v.

STATE of Alaska, Appellee.

No. A–8184.

Court of Appeals of Alaska.

May 23, 2003.

Rehearing Denied June 20, 2003.

Verne E. Rupright, Rupright & Foster, LLC, Wasilla, for Appellant.

Terisia K. Chleborad, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

*OPINION*

MANNHEIMER, Judge.

In this case, a judicial officer issued what he called a "contingent" warrant that authorized the police to search Betty Magee's residence if a certain pre-condition was fulfilled. When the police applied for this warrant, they were searching for a "meth lab"—that is, a site for illegally manufacturing methamphetamine. The officer who applied for the warrant conceded that the police currently lacked sufficient justification to search Magee's residence. However, the officer argued—and the issuing magistrate agreed—that there *would be* sufficient justification for a search of Magee's residence if the police first searched another location (a location for which they had a normal warrant) and found additional incriminatory evidence there. The

magistrate therefore issued a warrant that authorized the police to search Magee's residence contingent upon the police first searching the other location and finding evidence of either first-degree or second-degree misconduct involving a controlled substance.

The question is whether such a warrant violates the Fourth Amendment to the United States Constitution. As we explain in more detail below, we conclude that this search warrant is unconstitutional because the contingent event that triggered the officers' authority to conduct the search—the finding of incriminatory evidence at the other location—was not defined precisely enough to assure judicial control over the search process.

### Underlying facts

In late 2000, the Matanuska–Susitna Narcotics Team was investigating a possible meth lab at the residence of Donald Wares. According to information gathered by the police, Wares had been purchasing or otherwise accumulating large quantities of chemicals that, in combination, could be used to manufacture methamphetamine.

Wares lived in a semi-rural part of Wasilla, on acreage located at 3998 Pittman Road. Wares's property adjoined Magee's, who owned acreage at 3900 Pittman Road.

Wares had certain connections to the Magee property. He was a friend of Robert Magee, who the police mistakenly believed was Betty Magee's son. (Robert is, in fact, Magee's former brother-in-law.) The police had information that Robert Magee had accompanied Wares on one occasion when Wares purchased toluene, a solvent that can be used in the manufacture of methamphetamine. And the address on Wares's vehicle registration was Magee's address (3900 Pittman Road) instead of his own address (3998 Pittman Road).

On January 2, 2001, the police applied for a warrant to search Wares's property (3998 Pittman). The validity of that warrant is not contested here. However, at the same time, the police applied for a "contingent" warrant to search Magee's property (3900 Pittman).

The officer who applied for these two warrants forthrightly told the magistrate that he did not believe that the police currently had sufficient information to justify a search warrant for Magee's property. However, the officer argued that if the police searched Wares's property and found evidence of a meth lab, then a search warrant for Magee's property would be justified. Specifically, the officer argued that the discovery of the meth lab at Wares's property, combined with Wares's association with Robert Magee and his other connections to the Magee property, would establish probable cause to believe that meth-making supplies, or illegal precursor chemicals, or paperwork documenting the illegal operation would be found on the Magee property.

The magistrate agreed that if the police found a meth lab at Wares's property, or even "evidence of significant precursors" of methamphetamine, this would establish sufficient justification for a search of Magee's property. The magistrate declared that he would issue the contingent warrant.

However, the proposed warrant prepared by the police stated that the search of Magee's property could take place if they found "[any] evidence of illegal drug activity" at 3998 Pittman Road (*i.e.*, at Wares's property). The magistrate declined to issue the warrant with that wording:

> *The Court:* "Contingent upon finding evidence of ... illegal drug activity"—I think that's a little broad. I mean, if you find two joints at [Wares's property], that's illegal drug activity, but ... that's certainly not enough to [justify the requested search of Magee's property]. [The warrant will be contingent on your finding] evidence of misconduct involving a controlled substance in the ... second or first degree at [Wares's property].

Accordingly, the magistrate drew a line through the words "illegal drug activity" and wrote "MICS 2< or 1<" (misconduct involving a controlled substance in the second or first degree). That is, the magistrate authorized the police to search Magee's property contingent upon their finding some evidence of either first-degree or second-degree controlled substance misconduct at Wares's

property when they executed the search warrant for that property.

### The basic rationale of "anticipatory" or "contingent" search warrants

■ In Magee's case, the police and the magistrate referred to the search warrant as a "contingent" warrant. Generally, the cases and the literature on this topic refer to this type of warrant as an "anticipatory" warrant. Whatever the label, the basic idea is that the warrant authorizes a search if some future event occurs.

The quintessential anticipatory warrant involves the controlled delivery of contraband—illegal drugs, illegal weapons, etc.—to an identified physical location. Generally, in such cases, the package or other shipping container has already been intercepted and opened (either by the police or by agents of the shipper), so the police know to a reasonable certainty that the package contains contraband. The only element of probable cause still lacking is the fact that this contraband has not yet arrived on the premises that the police wish to search. *See* Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* (3rd ed.1996), § 3.7(c), Vol. 2, pp. 362–63, 368.

Under the Fourth Amendment, a court can issue a warrant to search particular premises only if there is probable cause to believe that evidence of a crime will be found there. In the case of a controlled delivery of contraband, until the moment when the contraband is delivered to the suspect premises, it is clear that this contraband *will not* be found on the premises. But in such cases, most jurisdictions have allowed judicial officers to issue an anticipatory warrant that pre-authorizes a search of the premises, contingent upon the delivery being made. These jurisdictions have ruled that such search warrants are valid so long as the information supporting the warrant establishes probable cause to believe that the specified contraband will be present on the premises *at the time of the search. LaFave, supra,* § 3.7(c), Vol. 2, p. 364. This position was adopted by our supreme court in *Johnson v. State,* 617 P.2d 1117, 1124 & n. 11 (Alaska 1980).

In cases involving controlled deliveries, an anticipatory warrant plainly offers advantages to the police. Since the police control when the delivery will be made, they can lay out their information to a magistrate in advance. Once the delivery is made, the officers can immediately proceed to make the search—without the interruption of trying to find a magistrate to hear this final piece of the probable cause showing, and without the administrative bother of asking a judicial officer to stand by on the telephone, waiting for the moment when the contraband is delivered.

The question is whether this increase in efficiency can be squared with the Constitution. In general, courts have answered "yes". *LaFave* quotes the following passage from *Alvidres v. Superior Court,* 12 Cal. App.3d 575, 90 Cal.Rptr. 682, 686 (1970), as a "sound" explanation of why this type of anticipatory warrant does not violate the Fourth Amendment:

> We must ask ourselves whether the objective of the [warrant clause] is better served by permitting officers [in controlled delivery cases] to obtain a warrant in advance of the delivery of the narcotic or by forcing them to go to the scene without a warrant and there make a decision at the risk of being second-guessed by the judiciary if they are successful in recovering evidence or contraband. We believe that achievement of the goals [of] the exclusionary ... rule is best attained by permitting officers to seek warrants in advance when they can clearly demonstrate that their right to search will exist within a reasonable time in the future.

*LaFave, supra,* § 3.7(c), Vol. 2, p. 365.

### The requirement that the contingency be strictly defined

■ Among the jurisdictions that allow judicial officers to issue anticipatory warrants, there is general agreement that the contingency—the event that triggers the authority to conduct the search—must be strictly and precisely defined. *LaFave* quotes the following passage from the First Circuit's decision in *United States v. Ricciardelli* as an accurate statement of this requirement:

[T]he magistrate must ensure that the triggering event is both ascertainable and preordained. The warrant should restrict the officers' discretion in detecting the occurrence of the event to almost ministerial proportions, similar to [the officers'] discretion in locating the place to be searched. Only then ... are the ends of explicitness and clarity preserved.

*LaFave, supra,* § 3.7(c), Vol. 2, p. 369, quoting *Ricciardelli,* 998 F.2d 8, 12 (1st Cir.1993). To ensure that the police play merely a "ministerial" role in deciding whether the triggering event has occurred, courts require that the triggering event be "clear, explicit, and narrowly drawn".[1]

Courts generally assert that the rationale for this requirement is to prevent "premature" execution of the warrant, either by accident or as a result of police manipulation. *See LaFave, supra,* p. 368 and 2003 Supplement, p. 57. But the true rationale, it seems to us, is to preserve the constitutional mandate that judicial officers, and not police officers, are to decide whether the police may conduct the search.

The Constitution forbids a judicial officer from ceding to the police the authority to decide whether a search is justified. The law further requires that, when the police apply for a warrant, the judicial officer must be presented with the particular facts that the police are relying on to justify the search. Moreover, to assure an aggrieved citizen's right to challenge a search, and to ensure proper judicial review of the magistrate's decision, a contemporaneous record (an affidavit, or testimony presented in court, or both) must be made of the facts that the police are relying on.

Anticipatory warrants create the danger that these rules will be circumvented or defeated. If the police are given discretion in deciding whether the triggering event has occurred, or if the triggering event is defined so broadly that a range of occurrences might arguably be interpreted as triggering the officers' authority to conduct the requested search, then we can no longer be sure that the judicial officer is the one who is controlling the process. In such instances, the validity of the search will rest, in part, on facts whose relevant particulars are unknown to the magistrate. And by the same token, the pre-search record—the affidavits and testimony presented to the magistrate—will not reveal all of the facts that the government is relying on to justify the search.

■ For these reasons, we hold that when a judicial officer issues an anticipatory warrant, the contingency that triggers the officers' authority to conduct the search must be explicit, it must be clear, and it must be drawn so narrowly that the officers' role in detecting the occurrence of this event is essentially ministerial—similar to the clarity and precision that is required in the warrant's description of the premises to be searched.

■ (As we stated in *State v. Gutman,* 670 P.2d 1166 (Alaska App.1983), a judicial officer who issues an anticipatory warrant should normally delineate the triggering contingency in the text of the warrant itself. *Id.* at 1173 n. 5. However, an anticipatory warrant will be valid so long as (1) the contingency is clearly described in the affidavits and/or the testimony supporting the warrant, and (2) the text of the warrant expressly incorporates that contingency by reference. *Id.*)

The First Circuit's decision in *Ricciardelli* imposes a second requirement on anticipatory warrants: the requirement that the triggering contingency be "pre-ordained"—*i.e.,* that the triggering event be on an apparently "sure and irreversible" course toward fulfillment. *LaFave* endorses this second requirement, at least when government agents are the ones orchestrating the occurrence of the triggering event. *LaFave, supra,* § 3.7(c), Vol. 2, p. 369 and 2003 Supplement, p. 57.

In *State v. Gutman,* 670 P.2d 1166 (Alaska App.1983), this Court upheld an anticipatory warrant for which the triggering "event" was actually a series of events culminating in the anticipated sale of cocaine by a third person

---

1. *United States v. Moetamedi,* 46 F.3d 225, 229 (2nd Cir.1995). *Accord United States v. Garcia,* 882 F.2d 699, 703–04 (2nd Cir.1989).

to a police informant. The occurrence of each step in this series of events was obviously not "pre-ordained", "sure", or inevitable. Several courts (in addition to the First Circuit in *Ricciardelli* ) have either held or indicated that they would not uphold an anticipatory warrant under such facts.[2]

Because the *Gutman* decision does not discuss this point of law, it is unclear whether this issue received active consideration. However, we need not examine this problem further because, as we explain next, the anticipatory warrant in this case fails to satisfy the first requirement described above: the requirement that the triggering contingency be "clear, explicit, and narrowly drawn".

*The warrant in the present case does not define the triggering contingency with sufficient clarity and precision*

The warrant in the present case authorized the police to search Magee's property if they first searched Wares's property and found any evidence of either first-degree or second-degree controlled substance misconduct. This contingency is not sufficiently precise to pass constitutional muster.

Even if the warrant had described the contingent event as "the discovery of a meth lab", one might still reasonably doubt whether this definition was sufficiently "clear, explicit, and narrowly drawn" to ensure that the police played only a "ministerial" role in assessing whether the contingency was met. It would be one thing if the police caught people red-handed in the act of extracting methamphetamine from precursor chemicals. But what if only the precursor chemicals were found? What if no precursor chemicals were found, but only the more basic chemicals needed to conduct the manufacturing process? And what if no chemicals at all were found, but only vessels and other hard-

ware that could be used to manufacture methamphetamine if one had the raw materials?

Conceivably, all of these contingencies might qualify as "the discovery of a meth lab". Thus, even if the warrant had been worded as precisely as that, we would still have serious doubts concerning its constitutionality.

But the warrant was worded far more broadly. It authorized the police to search Magee's residence if, during their prior search of Wares's property, they discovered evidence of either first-degree or second-degree controlled substance misconduct.

The phrase "evidence of first-degree or second-degree misconduct involving controlled substances" encompasses far more than the discovery of the meth lab that the police were looking for. For instance, the search warrant application contained information that Wares had been purchasing quantities of acetone and toluene; both of these chemicals are solvents that can be used in the manufacture of methamphetamine. Thus, if the police merely found a container (either full or empty) of either acetone or toluene at Wares's property, the police could reasonably claim that this container constituted "evidence" of second-degree controlled substance misconduct—thus authorizing them to search Magee's property.

We further note that, as defined in AS 11.71.020, the offense of second-degree controlled substance misconduct includes not only the manufacture or possession with intent to deliver methamphetamine[3], but also the manufacture or possession with intent to deliver of any other schedule IA controlled substance—such as heroin[4], methadone[5], opium[6], or codeine[7]. Thus, had the police searched Wares's residence and discovered any of these other substances under circum-

2. *See United States v. Leidner,* 99 F.3d 1423, 1429 (7th Cir.1996); *United States v. Hendricks,* 743 F.2d 653, 654–55 (9th Cir.1984); *Commonwealth v. Coleman,* 769 A.2d 462, 467–69 (Pa.Super.2001); *State v. Canelo,* 139 N.H. 376, 653 A.2d 1097, 1101–02 (1995); *State v. Ulrich,* 265 N.J.Super. 569, 628 A.2d 368, 371–72 (App. 1993); *People v. Glen,* 30 N.Y.2d 252, 331 N.Y.S.2d 656, 282 N.E.2d 614, 617–18 (1972).

3. AS 11.71.020(a)(2).

4. AS 11.71.140(d)(11).

5. AS 11.71.140(c)(40).

6. AS 11.71.140(b)(1).

7. AS 11.71.140(b)(1)(G).

stances indicating that these substances were being manufactured or were intended for sale, the police could reasonably conclude that they were now authorized to search Magee's residence.

Similarly, first-degree controlled substance misconduct includes not only the delivery of methamphetamine to a minor, but also the delivery of *any* schedule IA, IIA, or IIIA substance to a minor [8]—*i.e.*, substances such as cocaine [9], PCP [10], LSD [11], mescaline [12], barbiturates [13], codeine medications [14], and hashish [15]. Had the police discovered any of these substances under circumstances indicating potential sales to minors, they likewise could reasonably conclude that they were now authorized to search Magee's residence.

Moreover, first-degree controlled substance misconduct also includes the offense of "engaging in a continuing criminal enterprise". *See* AS 11.71.010(a)(3). This offense consists of committing *any* felony defined in AS 11.71 if that felony is "part of a continuing series of five or more violations of [AS 11.71]" which the defendant "undertakes in concert with at least five other persons [who are] organized, supervised, or otherwise managed" by the defendant, and if the defendant obtains "substantial income or resources" from this series of crimes.

The police already had information linking at least five other people to Wares's activities. The search warrant application names eight people (including Robert Magee) who were associates of Wares and were at least potentially involved in his suspected drug activities. Thus, if the police searched Wares's residence and found evidence of *any* felony drug offense defined in AS 11.71, they conceivably could have concluded that they now had evidence of first-degree controlled substance misconduct—and that they were therefore now authorized to search Magee's residence.

The Constitution requires that the police play a purely ministerial role in identifying the occurrence of the contingency that triggers their authority under an anticipatory warrant. But if the police are to play this ministerial role, if the decision to authorize the search is to remain with the magistrate and not be ceded to the police, then the triggering contingency must be a clearly defined, readily ascertainable event—something that everyone can agree (both beforehand and afterward) has either happened or failed to happen. The contingency at issue here— the discovery of "evidence" of first-degree or second-degree controlled substance misconduct—is not a clearly defined, readily ascertainable event. Rather, this phrase authorized a search of Magee's property if the police made any one of a wide range of potential discoveries at the Wares property. Many of these discoveries were so ill-defined that people could reasonably debate (either at the time of the discovery or later) whether they had occurred.

For these reasons, we conclude that the anticipatory warrant in this case is unconstitutional. By defining the triggering contingency as the discovery of any evidence of either first-degree or second-degree controlled substance misconduct, the magistrate gave the police far too much discretion to decide whether to search Magee's property.

There was no clearly defined, readily ascertainable thing that the police were looking for at Wares's residence, nor was there a clearly defined, readily ascertainable event that the police expected to occur at Wares's residence. Accordingly, this case presents the type of situation where the police were obliged to follow a normal warrant application process. That is, the police could conduct the search of Wares's property (a search for which they already had probable cause) and then, if that search yielded pertinent information that potentially justified a

---

8.  AS 11.71.010(a)(1)—(2).

9.  AS 11.71.150(c).

10.  AS 11.71.150(d)(6).

11.  AS 11.71.150(b)(12).

12.  AS 11.71.150(b)(13).

13.  AS 11.71.160(c)(3).

14.  AS 11.71.160(e).

15.  AS 11.71.160(f).

search of Magee's residence, the police could include that information in their application for a second warrant. But without a contingency so precisely defined as to eliminate police discretion and maintain judicial control of the process, the anticipatory warrant was unlawful.

### Conclusion

The evidence obtained under the search warrant is suppressed, and the judgement of the superior court is REVERSED.