OPINION *Page 2 
{¶ 1} Defendant-Appellant, Jeremy J. Blevins, appeals the April 18, 2006 Judgment of the Marion County Court of Common Pleas denying his motion to suppress evidence.
 {¶ 2} On January 18, 2006, Detective Andrew Isom, from the Marion Police Department, received information from a confidential informant that he had viewed between 1-1 ½ kilograms of cocaine as well as a quantity of Ecstasy in Blevins' residence at 503 Evans Road, Marion, Ohio (hereinafter referred to as "503 Evans Road"). Additionally, the informant indicated that he had previously made purchases of crack cocaine from Blevins. Upon receiving this information, the Marion Police Department began surveillance on 503 Evans Road.
 {¶ 3} On January 19, 2006, while observing Blevins, Detective Isom concluded that drug activity was occurring at 503 Evans Road. In the afternoon of January 20, 2006 Detective Isom appeared before a magistrate and requested an anticipatory search warrant to search 503 Evans Road. Detective Isom provided an affidavit, which described the premises at 503 Evans Road and the items at the property to be seized. He also provided sworn testimony to supplement his affidavit. *Page 3 
 {¶ 4} Based on the affidavit and Detective Isom's testimony, the magistrate issued an anticipatory search warrant, which provided "You are commanded that this search may be executed only on completion of a delivery of crack cocaine or powder cocaine from Jeremy Blevins AND/OR an occupant of 503 Evans Road, CITY OF MARION, Marion County, Ohio 43302 . . ."
 {¶ 5} Later in the evening on January 20, 2006 Major Bill Collins observed Blevins in the kitchen area of 503 Evans Road engaged in some continuous activity for a period of about 45 minutes and indicated that he could not see what Blevins was actually doing. Shortly after Major Collins observed the activity in the kitchen, Blevins left the house, entered his vehicle, and proceeded to the area of Davids Street and Bellefontaine Avenue in Marion, Ohio. Major Collins followed Blevins' vehicle until it abruptly turned into a parking lot, and Collins had to turn around further down the road to return to enter the parking lot.
 {¶ 6} After Blevins' vehicle turned into the parking lot, Patrolman Cory Winfield, a police officer with the Marion Police Department, initiated a traffic stop on Blevins. Patrolman Winfield was aware that Blevins was driving under suspension and had observed Blevins turn into the area of Davids Street and Bellefontaine Avenue.
 {¶ 7} At some point between leaving 503 Evans Road and the traffic stop, Blevins was joined in the car by another individual, T.J. Ross. At the hearing on *Page 4 
the motion to suppress, Major Collins testified that while he was following Blevins, he did not observe Ross to be in the vehicle with him. In fact, none of the officers involved in the traffic stop actually observed Ross enter Blevins' car. It is suspected that Ross entered the car after Blevins turned into the parking lot, and was in the car for an extremely short period of time prior to the officers extricating him from the vehicle.
 {¶ 8} Both Ross and Blevins were ordered from the car. During the search of Blevins' vehicle, the police found more than eleven grams of recently cooked crack cocaine in the passenger-door compartment. Once the police officers effected the traffic stop and found the contraband located in Blevins' vehicle, they radioed other officers stationed at 503 Evans Road to commence a search of the premises. The search of 503 Evans Road yielded, among other things, various drugs and approximately $8,295 in cash.
 {¶ 9} Subsequently, the Marion County Grand Jury indicted Blevins on two counts of possession of crack cocaine in violation of R.C.2925.11(A),(C)(4)(d), felonies of the second degree; one count of possession of crack cocaine in violation of R.C. 2925.11(A),(C)(4)(b), a felony of the fourth degree; one count of possession of marijuana in violation of R.C. 2925.11(A),(C)(3)(c), a felony of the fifth degree; one count of aggravated possession of drugs in violation of R.C. 25.11(A),(C)(1)(c), a felony of the second *Page 5 
degree; and, one count of illegal manufacture of drugs in violation of R.C. 2925.04(A),(C)(2), a felony of the first degree.[1]
 {¶ 10} On January 30, 2006, Blevins was arraigned and pled not guilty. On March 3, 2006 Blevins moved to bifurcate his trial proceedings. That motion was subsequently overruled. Blevins then filed a motion to suppress on March 28, 2006.
 {¶ 11} In his motion to suppress, Blevins argued that any evidence gathered was "the fruit of an unconstitutional search and seizure," because the anticipatory warrant was unconstitutionally vague and the police did not follow its mandates. Specifically, Blevins, relying onState v. Folk (1991), 74 Ohio App.3d 468, 599 N.E.2d 334 asserted that the detective's affidavit seeking the anticipatory search warrant did not provide that the crack cocaine was on a sure and irreversible course to 503 Evans Road. Further, Blevins argued that the anticipatory search warrant did not provide adequate judicial control of the warrant's execution, relying on State v. Marks, 2nd Dist. No. 19629, 2003-Ohio-4205. Additionally, Blevins argued that the specific terms of the warrant required the "completion of a delivery" and that there was no completed delivery before the police executed the search warrant on 503 Evans Road. *Page 6 
 {¶ 12} On April 18, 2006 the trial court overruled Blevins' motion to suppress. Specifically, the trial court found:
 The anticipatory search warrant issued by the Municipal Court Judge indicated that it was not to be conducted until such time that the officers intercepted a delivery of cocaine from Defendant Blevins to someone at a remote location away from 503 Evans Road.
 * * *
 Defendant's theory regarding this Motion to Suppress is that the condition precedent to the anticipatory search warrant being executed was not fulfilled in that there was no "delivery" of cocaine by Defendant Blevins to a third party. Defendant has a definition of the word "delivery" that is not shared by this Court. One gets the impression that the Defendant defines the word "delivery" to include only a hand-to-hand delivery by the Defendant to a third-party. This Court does not have such a limiting definition of the word "delivery." It is this Court's opinion that once the Defendant exited his house at 503 Evans Road and entered his vehicle, he was commencing the process of a "delivery." This Court, therefore, finds that the triggering event of the anticipatory search warrant was met when officers observed Defendant Blevins commencing the delivery process.
 {¶ 13} On May 16, 2006 Blevins changed his plea to no contest, and the trial court found Blevins guilty of all six counts. The trial court sentenced Blevins on June 15, 2006 to mandatory terms of five years in prison for each of the possession of crack cocaine charges in violation of R.C. 2925.11(A),(C)(4)(d), felonies of the second degree; to seventeen months in prison for the possession of crack cocaine charge in violation of R.C. 2925.11(A),(C)(4)(b), a felony of the fourth degree; to eleven months in prison for the possession of marijuana charge in violation of R.C. 2925.11(A),(C)(3)(c), a felony of the fifth degree; to a mandatory *Page 7 
term of five years in prison for the aggravated possession of drugs charge in violation of R.C. 2925.11(A),(C)(1)(c), a felony of the second degree; to a mandatory term of eight years in prison for the illegal manufacture of drugs charge in violation of R.C. 2925.04(A),(C)(2), a felony of the first degree. Additionally, the trial court ordered these sentences to be served concurrently for a total mandatory term of eight years in prison.
 {¶ 14} Blevins now appeals, asserting two assignments of error for our review.
 ASSIGNMENT OF ERROR I A TRIAL COURT COMMITS PREJUDICIAL ERROR IN DENYING A MOTION TO SUPPRESS AN ANTICIPATORY WARRANT, WHERE THE FACTS SHOW THE "TRIGGERING EVENT" RESULTED IN AN INITIAL WARRANTLESS SEARCH OF AN AUTOMOBILE, CONTRA ARTICLE 1, § 14 OF THE OHIO CONSTITUTION; AND THE FOURTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION.
 ASSIGNMENT OF ERROR II WHEN TESTIMONY IS PRESENTED REGARDING AN ANTICIPATORY WARRANT, THAT THE "TRIGGERING EVENT" INVOLVED THE INITIAL SEARCH OF A VEHICLE DRIVEN BY THE ACCUSED, AND NOT THE PREMISES NOTED IN THE WARRANT, THE RESULT IS AN INVALID WARRANT. THE POLICE WERE GIVEN TOTAL DISCRETION, CONTRA THE FOURTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION, AND ARTICLE 1, § 14 OF THE OHIO CONSTITUTION.
 {¶ 15} Blevins assignments of error shall be addressed together due to the fact that all of his assignments of error are substantially interrelated and pose *Page 8 
similar issues concerning whether the trial court erred in denying his motion to suppress. In both assignments of error Blevins attacks the validity of the searches conducted of both his vehicle and the house at 503 Evans Road. Specifically, Blevins asserts that the required "triggering event" of the anticipatory search warrant was too broad, because it did not require a controlled buy or a specific location where the delivery was to occur and gave the police complete discretion as to when the warrant could be executed.
 {¶ 16} Appellate review of a decision on a motion to suppress evidence presents a mixed question of law and fact. State v. Bressler, 3rd Dist. No. 15-05-13, 2006-Ohio-611.
 At a suppression hearing, the trial court assumes the role of trier of fact and is in the best position to resolve factual questions and evaluate the credibility of witnesses. State v. Carter (1995), 72 Ohio St.3d 545, 552, 651 N.E.2d 965. When reviewing a trial court's decision on a motion to suppress, an appellate court must uphold the trial court's findings of fact if they are supported by competent, credible evidence. State v. Dunlap (1995), 73 Ohio St .3d 308, 314, 652 N.E.2d 988. We must defer to "the trial court's findings of fact and rely on its ability to evaluate the credibility of the witnesses," and then independently review whether the trial court applied the correct legal standard. State v. Anderson (1995), 100 Ohio App.3d 688, 691, 654 N.E.2d 1034.
State v. Bressler, 2006-Ohio-611, at ¶ 10.
 {¶ 17} The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution guarantee "[t]he right of the people to be secure in their persons, houses, papers, and possessions, against *Page 9 
unreasonable searches and seizures." Accordingly, the State is prohibited from making unreasonable intrusions into areas where people have legitimate expectations of privacy without a search warrant.United States v. Chadwick (1977), 433 U.S. 1, 7, 97 S.Ct. 2476,53 L.Ed.2d 538, overruled on other grounds in California v. Acevedo (1991),500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619.
 {¶ 18} The Ohio Supreme Court has previously held that:
 [i]n determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, `[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the `veracity' and `basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.
State v. George (1989), 45 Ohio St.3d 325, 544 N.E.2d 640, at syllabus, citing Illinois v. Gates (1983), 462 U.S. 213, 238-39, 103 S.Ct. 2317,76 L.Ed.2d 527. In the United States Supreme Court's seminal case regarding determinations of probable cause to issue search warrants,Illinois v. Gates, the Court stated that the definition of probable cause "means less than evidence which would justify condemnation * * *. It imports a seizure made under circumstances which warrant suspicion."Gates, 462 U.S. at 235, quoting Locke v. United States (1813),11 U.S. 339, 348, 3 L.Ed. 364. Thus, "[i]t is clear that only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause." *Page 10 
 Gates, 462 U.S. at 235, quoting Spinelli v. United States (1969),393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637, abrogated by Gates, supra.
 {¶ 19} When "reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant issued by [a judge or] magistrate [under the totality of the circumstances analysis ofGates], neither a trial court nor an appellate court should substitute its judgment for that of the judge or magistrate by conducting a denovo determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant."State v. Bressler, supra, at ¶ 13; State v. George, 45 Ohio St.3d 325;Illinois v. Gates, 462 U.S. 213. Rather,
 the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, trial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant.
George, 45 Ohio St.3d at syllabus. Further, it is important to note that, probable cause exists when a reasonably prudent person would believe that there is a fair probability that the place to be searched contains evidence of a crime. Gates, 462 U.S. 213.
 {¶ 20} Generally an affidavit in support of a search warrant relates to probable cause that already exists — that is, the evidence sought is already at a *Page 11 
specified location. Berger v. New York (1967), 388 U.S. 41,87 S.Ct. 1873, 18 L.Ed.2d 1040. However, in certain circumstances that is not necessarily the case. When the police can demonstrate probable cause "that at some future time, but not presently, certain evidence of crime will be located at a specific place to be searched," the magistrate may issue an anticipatory warrant. State v. Folk (2nd Dist. 1991), 74 Ohio App.3d 468, 472, 599 N.E.2d 334.
 {¶ 21} Recently, in U.S. v. Grubbs (2006), 547 U.S. 90, 126 S.Ct. 1494,164 L. Ed.2d 195 the United States Supreme Court discussed the requirements for a constitutionally valid anticipatory search warrant. Specifically, the Supreme Court provided:
 An anticipatory warrant is "a warrant based upon an affidavit showing probable cause that at some future time (but not presently) certain evidence of crime will be located at a specified place." Most anticipatory warrants subject their execution to some condition precedent other than the mere passage of time-a so-called "triggering condition."
 * * *
 Because the probable-cause requirement looks to whether evidence will be found when the search is conducted, all warrants are, in a sense, "anticipatory." In the typical case where the police seek permission to search a house for an item they believe is already located there, the magistrate's determination that there is probable cause for the search amounts to a prediction that the item will still be there when the warrant is executed.
 * * *
 Anticipatory warrants are, therefore, no different in principle from ordinary warrants. They require the magistrate to determine (1) that it is now probable that (2) contraband, evidence of a crime, or a fugitive will be on the described premises (3) when the warrant is executed. It should be noted, *Page 12 however, that where the anticipatory warrant places a condition (other than the mere passage of time) upon its execution, the first of these determinations goes not merely to what will probably be found if the condition is met.
 * * *
 Rather, the probability determination for a conditioned anticipatory warrant looks also to the likelihood that the condition will occur, and thus that a proper object of seizure will be on the described premises. In other words, for a conditioned anticipatory warrant to comply with the Fourth Amendment's requirement of probable cause, two prerequisites of probability must be satisfied. It must be true not only that if the triggering condition occurs "there is a fair probability that contraband or evidence of a crime will be found in a particular place," but also that there is probable cause to believe the triggering condition will occur . The supporting affidavit must provide the magistrate with sufficient information to evaluate both aspects of the probable-cause determination.
Id. at 1498-1500 (internal citations omitted).
 {¶ 22} The vast majority of cases involving anticipatory warrants involve a controlled delivery at the residence in question.Folk, supra; U.S v. Lowe (C.A. Mich. 1978), 575 F.2d 1193. In controlled delivery cases, the delivery is the "triggering event" for execution of the warrant. Unlike a controlled delivery case, in this case, we are asked to determine the validity of an anticipatory search warrant which has a triggering event that was to occur at a location other than the place to be searched, 503 Evans Road.
 {¶ 23} Courts have often applied the "sure and irreversible course" standard to determine the validity of an anticipatory search warrant. In particular, the Second District Court of Appeals stated that "[w]hen the evidence to be seized is *Page 13 
on a sure and irreversible course" to a particular place, an anticipatory warrant may issue. State v. Nathan, 2nd Dist. No. 18911, 2001-Ohio-1826; United States v. Ricciardell (C.A.1, 1993), 998 F.2d 8.
 {¶ 24} Alternatively, where the anticipatory search warrant involves a situation other than a controlled delivery, courts have rejected the "sure and irreversible course standard." State v. Ward, 1st Dist. No. C-040379, 2005-Ohio-3036; United States v.Brack (C.A. 7 1999), 188 F.3d 748 ("The purpose of the sure course requirement is to prevent law enforcement authorities or third parties from mailing or otherwise sending a controlled substance to a residence to "create probable cause to search the premises where it otherwise would not exist." The requirement ensures that a sufficient nexus between the parcel and the place to be searched exists" (internal citations omitted)).
 {¶ 25} The sure and irreversible course requirement has been heavily questioned where the contraband at issue is not in the control of the government. The First District Court of Appeals has held the sure and irreversible course standard inapplicable in case like the present.State v. Ward, supra. In Ward, the anticipatory search warrant allowed officers to seize drugs that were being moved in a van from Florida to Cincinnati, once the drugs entered the jurisdiction. The court found the sure and irreversible course doctrine was inapplicable because the drugs were being moved by the defendants, not government. Id. It was possible *Page 14 
that the van could deviate from its course without invalidating the search warrant. However, multiple facts indicated the van was on its way back to Cincinnati, even if the van deviated. Id. This constituted sufficient probable cause.
 {¶ 26} The court, in Ward, also cites the reasoning articulated inMassachusetts v. Staines, in support of its holding. InStaines, the Supreme Judicial Court of Massachusetts found that the sure and irreversible course requirement does not apply where the drugs in question were controlled by the defendant and not by the government.Massachusetts v. Staines (2004), 441 Mass. 521, 806 N.W. 2d 910. The court in Staines noted that "[t]he numerous controlled buys detailed in the affidavit establish that the car was used by the defendant to sell cocaine, and the reasonable inference . . . is that the defendant kept a larger stash of cocaine in the car when making a sale." The question of when the cocaine will be in the vehicle is answered in Staines when a controlled buy is arranged with Staines and he arrives to complete the sale. Staines, 441 Mass. at 528.
 {¶ 27} In the present case, the testimony provided by Detective Isom indicated that drugs had been coming in and out of the house. Detective Isom further provided in the affidavit that Blevins had been leaving the house and going to various known drug locations. Thus, in the case at bar, the question of when the drugs will arrive is answered when Blevins leaves 503 Evans Road to make a delivery. Once this event occurs, there is probable cause to believe that cocaine is *Page 15 
in the vehicle, and consequently, probable cause to believe that the cocaine was being stored in the house.
 {¶ 28} In evaluating the validity of the search of the house, we look outside the jurisdiction to cases that have dealt with an anticipatory search warrant where the triggering condition was to occur away from the place to be searched.
 {¶ 29} In People v. Sousa (1993), 18 Cal.App.4th 549, 22Cal.Rptr.2d 264, police obtained an anticipatory warrant to search Sousa's residence "contingent upon the sale of marijuana [from a special agent to Sousa] and arrest of [Sousa]." On the same day the anticipatory search warrant was issued, Sousa met the special agent at a parking lot away from his residence and purchased marijuana. After the transaction was completed, Sousa and two codefendants were taken into custody. Following Sousa's arrest, the police served the search warrant on Sousa's residence and found marijuana, a scale, packaging materials, and a 12-gauge shotgun.
 {¶ 30} The California court found that at the time the warrant was issued, there was a clear showing that Sousa would be involved in an illegal drug purchase, which would take place in the immediate future. Furthermore, that the police established a direct link between Sousa's trafficking activities and his residence. Accordingly, the court found that the magistrate had sufficient *Page 16 
information to make a probable cause determination prior to issuing the warrant and that the anticipatory search warrant was valid.
 {¶ 31} In its discussion of the Sousa case, the California court notes the similarity to State v. Gutman (Alaska Ct.App. 1983), 670 P.2d 1166. In Gutman, the police obtained an anticipatory search warrant for Gutman's residence contingent upon the "occurrence of (1) a meeting between [a female subject] and [a police informant] for the purpose of consummating the cocaine sale; (2) the placement of a telephone call by [the female subject], ostensibly to Gutman, during the course of the meeting, followed by observation of Gutman leaving his apartment and meeting with [the female subject]; and (3) the actual sale of cocaine by [the female subject] to [the police informant] after her meeting with Gutman." Id. at 1170.
 {¶ 32} The Alaska court found that under the circumstances presented, the anticipatory search warrant for the defendant's residence did not leave the determination of probable cause in the hands of police and was not premature. At the time of issuance of the search warrant, the magistrate had probable cause to believe that the defendant would be involved in a drug sale, that his residence would be linked to the sale, and that the sale would occur in the immediate future. Additionally, the court found that the warrant was not based on mere speculation as to the possible cause of criminal activity in the future, because the likelihood of *Page 17 
the criminal act (the anticipated sale of drugs) and the probable presence of contraband at the place to be searched were both established prior to issuance of the warrant. Id. at 1173.
 {¶ 33} Both Sousa and Gutman are instructive in the present case because execution of the warrant occurs in a separate location from the triggering condition. In both of these cases, the courts found a direct link between the place to be searched and the trafficking activity. The courts also found that these warrants did not give police too much discretion because the likelihood that the contraband would be in the residence was established prior to the issuance of the search warrant.
 {¶ 34} In the present case, the affidavit supporting the search warrant provided that Detective Isom had "good and probable cause to believe that the [cocaine and/or marijuana] is located at the place [he was] requesting to search . . ." The Detective provided the judge with information indicating that he already had probable cause to believe that contraband was located at 503 Evans Road. Additional information was provided to the judge concerning the cooking of cocaine at 503 Evans Road. This provided the direct link that cocaine processed at 503 Evans Road would likely be the subject of delivery.
 {¶ 35} Finally, in evaluating the validity of the anticipatory search warrant, we find that the triggering condition was not too vague as to give police too much *Page 18 
discretion. The judge properly determined that a delivery of cocaine from the house would provide a sufficient link to support the search of 503 Evans Road. Further, the trial court properly defined delivery, in the context of the present case. During the request for the search warrant, the judge stated to Detective Isom
 [Judge] Ballinger: I find there is sufficient probable cause to issue a search warrant for 503 Evans Road, here in Marion County, Ohio. This is based on the fact that before that, an anticipatory warrant, before going into this home, that you will have the cocaine that you are looking for from the stop on that car.
 [Detective Isom]: Yes.
 [Judge]: . . . which you believe you can get a stop on that car because of the Driving Under Suspension stop you will be able to get on this Jeremy Blevins?
 [Detective]: Yes, ma'm.
, the definition of delivery as provided by the judge, was the Blevins be headed out on a delivery. The delivery was occurring when the car was stopped. Based on the foregoing, we find the anticipatory search warrant to be valid.
 {¶ 36} However, it is also important to note that the warrant at issue could have validly authorized the search of the house without the anticipatory language. "To establish probable cause to issue a search warrant, an affidavit must contain sufficient information to allow a magistrate to draw the conclusion that evidence is likely to be found at the place to be searched." Ward, supra, at ¶ 9 citing United States v.Ventresca (1965), 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684. *Page 19 
 {¶ 37} Based on the testimony supporting the warrant, there was already sufficient information provided to the judge to indicate that the drugs were already located in the house.
 [Detective]: I had an informant contact me two days ago advising that he was in the house and saw a large amount of cocaine and ecstacy, there was over a kilo, kilo and a half of cocaine . . . includes everything from Jeremy cooking cocaine over there . . . We have observed Jeremy on several occasions leaving in vehicles and going to known drug locations. . .
 * * *
 [Judge]: Okay. So, do you believe that upon that, you receiving that information about the drugs in the vehicle that there is going to be a fair probability that the evidence is going to be in that house?
 [Detective]: Yes, also from the intel[ligence] we received on the house.
Based on this information, we find that there was sufficient probable cause to support the warrant to authorize the search of the house independently of the triggering condition and that the magistrate had a substantial basis for concluding that probable cause existed.
 {¶ 38} It is further important to note that the stop of Blevins' vehicle, based on the charge of driving under a suspended license was independently valid and supports the search of the car. Automobiles may be stopped without a warrant as long as there exists "a reasonably articulable belief that an offense has been committed or that the vehicle contains contraband." State v. Ward, supra, citing Chambers v.Maroney (1970), 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419. Here, *Page 20 
Blevins' car was properly stopped because Blevins was driving with a suspended license. Officers were aware of Blevins' suspended license before they effected the stop of his vehicle.
 {¶ 39} Further, "[o]nce a law-enforcement officer has probable cause to believe that a vehicle contains contraband, the officer may search a validly stopped motor vehicle based on the well-established automobile exception to the warrant requirement." State v. Ward at ¶ 30 citingMaryland v. Dyson (1999), 527 U.S. 465, 119 S.Ct. 2013, 144 L.Ed.2d 442;State v. Moore (2000), 90 Ohio St.3d 47, 734 N.E.2d 804, 2000-Ohio-10. In this case, for all the reasons listed in the affidavit to obtain the warrant, the police had probable cause to believe Blevins' vehicle contained drugs.
 {¶ 40} Major Collins testified that he believed Blevins was going to deliver drugs when he left 503 Evans Road that evening, after Collins had observed Blevins engaged in what appeared to be a cooking activity in the kitchen of 503 Evans Road. Further, Detective Isom stated in his affidavit to the search warrant that police had observed Blevins leave 503 Evans Road several times over the previous days and go to known drug locations. This is sufficient to constitute probable cause to believe that the vehicle driven by Blevins may contain contraband. *Page 21 
 {¶ 41} The Ohio Supreme Court has previously concluded that "[w]here police officers have probable cause to search an entire vehicle, they may conduct a warrantless search of every part of the vehicle and its contents, including all movable containers and packages, that may logically conceal the object of the search." State v. Welch (1985),18 Ohio St.3d 88, 480 N.E.2d 384, at syllabus, citing United States v.Ross (1982), 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572. In this case the officers were authorized to search the entire vehicle drive by Blevins, including the compartment on the passenger door, where the more than eleven grams of recently cooked crack cocaine were located.
 {¶ 42} Nevertheless, even if we were to determine that the affidavit did not provide the judge with a substantial basis for concluding that there was probable cause to search 503 Evans Road, we would still be compelled to uphold this search based upon the "good faith exception" to the exclusionary rule set forth by the United States Supreme Court inUnited States v. Leon (1984), 468 U.S. 897, 104 S.Ct. 3405,82 L.Ed.2d 677 and subsequently adopted by the Ohio Supreme Court in State v.Wilmoth (1986), 22 Ohio St.3d 251, 490 N.E.2d 1236.
 {¶ 43} In Leon, the Court considered the costs and benefits of applying the exclusionary rule to evidence seized under a warrant subsequently held invalid. While the court reaffirmed continued application of the exclusionary rule in cases of substantial and deliberate Fourth Amendment violations, it questioned whether *Page 22 
such application would have any deterrent effect on officers who have "acted in the objectively reasonable belief that their conduct did not violate the Fourth Amendment." Leon, 468 U.S. at 918.
 {¶ 44} Balancing the countervailing interest,
 the Court reasoned that barring evidence obtained by officers acting in objectively reasonable reliance on a search warrant, which was later determined to not be based on probable cause due to the error of the issuing magistrate, did not further the purpose of the exclusionary rule. Leon, 468 U.S. at 921. However, the Court specifically held that the reliance by the officer on the search warrant must be objectively reasonable in order for the good faith exception to apply.
Bressler, supra, at ¶ 18.
 {¶ 45} In George, the Ohio Supreme Court stated that the good faith exception can only be precluded where:
 (1)" * * * the magistrate or judge * * * was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth * * * "; (2) "* * * the issuing magistrate wholly abandoned his judicial role * * * "; (3) an officer purports to rely upon "* * * a warrant based on an affidavit `so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable'"; or (4) "* * * depending on the circumstances of the particular case, a warrant may be so facially deficient-i.e., in failing to particularize the place to be searched or the things to be seized-that the executing officers cannot reasonably presume it to be valid. * * *
George, 45 Ohio St.3d at 331 citing Leon, supra, at 923,104 S.Ct. at 3421 (internal citations omitted). *Page 23 
 {¶ 46} In this case, none of the above mentioned circumstances necessary to preclude application of the good faith exception are present. There has been no allegation or evidence that the information contained in the affidavit was given falsely or in reckless disregard of the truth. In addition, even without the anticipatory condition, the affidavit was not so lacking in indicia of probable cause that it would render the police officer's belief in the existence of probable cause entirely unreasonable. Furthermore, the search warrant was not facially deficient.
 {¶ 47} In the present case, the police officer's who searched the Blevins residence and vehicle acted in objectively reasonable reliance on the search warrant. It is also important to note that in effecting the traffic stop of Blevins' vehicle, officers complied with the verbal instructions given by the judge. See supra.
 {¶ 48} Accordingly, the trial court did not err in overruling Blevins' motion to suppress, and the assignments of error are overruled. Therefore, the judgment of conviction and sentence entered in the Marion County Court of Common Pleas, Ohio is affirmed.
Judgment affirmed.
 PRESTON, J., concurs.
ROGERS, P.J., concurs in part and dissents in part.
[1] We note that the indictment in this case was a "Joint Indictment" and included eleven counts. Of these eleven counts, six pertained to Blevins, while the remaining five pertained to Jennifer Tiller, a co-defendant in the trial court. Tiller's five counts are not subject to this appeal. *Page 24